George GRAVES, Plaintiff–Appellant,

v.

**FINCH PRUYN & COMPANY, INC., Defendant–Appellee.**

**Docket No. 05–3564 CV.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 23, 2006.

Decided: July 12, 2006.

---

Nathaniel B. Smith, Law Offices of Nathaniel B. Smith, New York, NY, for Plaintiff–Appellant.

Michael T. Wallender, Law Offices of Michael T. Wallender, Albany, NY, for Defendant–Appellee.

Before WALKER, Chief Judge, WINTER and SOTOMAYOR, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

In this employment-discrimination lawsuit, plaintiff-appellant George Graves sues his former employer, defendant-appellee Finch Pruyn & Company, Inc. ("Finch Pruyn"), alleging that Finch Pruyn forced

him out of his job as a paper inspector because of his disability—a bony growth on his heel known as a bone spur—and his age. The district court granted Finch Pruyn's motion for summary judgment in an oral decision from which Graves appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and for the reasons stated below, we affirm in part, vacate in part, and remand.

## BACKGROUND

Over the course of seventeen years, George Graves worked his way up from a laborer in the woodroom of paper manufacturer Finch Pruyn to a paper inspector in its quality-assurance department, a position to which he was promoted in 1991. In late 1999, Graves was diagnosed with a bone spur on the heel of his left foot, a painful condition which required surgery and treatment.[1] Because paper inspectors at Finch Pruyn are on their feet for much of their shifts, Finch Pruyn assigned Graves to "light duty" in the months preceding surgery to accommodate his foot pain. After surgery in May 2000, Graves missed three months of work while on paid disability leave to recover from the surgery, and he then returned to work in September 2000.

From September 2000 through October 2000, Graves was again assigned to light duty. At the end of October 2000, the company put Graves back on paid disability leave, informing him that no more light-duty work was available. The six months of paid disability leave to which Graves was entitled under company policy ran out in December 2000. On January 4, 2001, Finch Pruyn's human-resources ("HR") di-

rector, Michael Strich, gave Graves three options: (1) return to full-duty work immediately, (2) take a 64% pay cut (from $50,000 to $18,000 a year) and work at a desk job, or (3) have a doctor state that Graves is totally disabled and take disability retirement with the concomitant disability pension benefits of approximately $269,000. Graves elected the third option. At Graves's request, the company allowed him to work for the quality-assurance department in a sedentary job until the end of January 2001, giving Graves an income stream while he arranged for disability retirement. During this period, Graves did clerical office work and trained a new paper inspector. After this assignment, Graves performed no work for Finch Pruyn.

## DISCUSSION

This court reviews de novo the district court's grant of summary judgment, construing the evidence in the light most favorable to Graves and asking whether there is a genuine issue as to any material fact and whether Finch Pruyn is entitled to judgment as a matter of law. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003). We first discuss Graves's disability-discrimination claims and then turn to Graves's age-discrimination claim.

### I. Disability Discrimination

■ Section 102(a) of the Americans with Disabilities Act of 1990 ("ADA") creates a private right of action for disability-based employment discrimination. 42 U.S.C. § 12112(a).[2] A plaintiff suing under the ADA for disability discrimination

---

1. Graves ultimately was diagnosed with an accessory ossicle, an extra bone, in his left foot. He had the ossicle surgically removed on February 14, 2001.

2. "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees,

bears the burden of establishing a prima facie case. In so-called reasonable-accommodation cases, such as this one, the plaintiff's burden "requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.2004); *see* 42 U.S.C. § 12111(8) (defining a "qualified individual with a disability"—a person whom the statute protects— as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"); *id.* § 12112(b).(5)(A) (defining "discriminate" to include a failure to make reasonable accommodations unless undue hardship would result). On appeal, the parties focus on the third and fourth elements of the prima facie case.[3]

Graves has not pointed to record evidence to dispute Finch Pruyn's contention that the essential functions of the job at issue, paper inspector at Finch Pruyn, include lifting up to 30 pounds and pushing heavy rolls of paper. Nor do the parties dispute that Graves's bone spur prevented him from performing these job functions without accommodation. Thus, to establish the third and fourth elements of his prima facie case, Graves must show that he could fulfill the essential job functions with reasonable accommodations that were refused by Finch Pruyn. Graves has contended that, at two points in time, Finch Pruyn should have made such reasonable accommodation.

## A. Reasonable Accommodation in October 2000

■ In his deposition, Graves asserted that Finch Pruyn should have given him a further light-duty assignment as of October 30, 2000, rather than putting him back on disability leave after determining that there was no longer a need for the light-duty position that Graves occupied. Graves's lawyer pressed this argument again at the summary-judgment hearing, but he does not press it on appeal. The argument is therefore waived, and we will not consider it. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998).

## B. Reasonable Accommodation in January 2001

### 1. Unpaid Leave of Absence

Graves also argued at the summary-judgment hearing, and argues now on appeal, that as of January 4, 2001, after his disability leave had expired, the company should have given him an accommodation consisting of unpaid leave to see a foot specialist about rehabilitation of his foot. As an initial matter, Finch Pruyn argues that Graves never requested such an unpaid leave of absence in January 2001. This request would matter because, generally, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630, app. at 363 (2003); *accord Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C.Cir.1999) ("An underlying

---

employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

**3.** A claim of disability discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290–301 (McKinney 2005), is governed by the same legal standards as govern federal ADA claims. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n. 1 (2d Cir.2000). Thus, to the extent that Graves brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim.

assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation ....").

 It is clear that Graves did not use the phrase "unpaid leave of absence" at any point in his communications with Finch Pruyn. But Graves testified about his January 4, 2001 conversation with HR manager Strich as follows:

> I told him [Strich] Dr. Yovanoff recommended Dr. William O'Connor, who is a specialist in Saratoga, another foot specialist.
>
> I told him I was trying to make an appointment with him [Dr. O'Connor]. He asked me how long it would take. I said maybe a couple weeks. I was then told we do not have any more time....
>
> ....
>
> ... I believe I asked for more time, that I was trying to see this specialist, Dr. O'Connor. I was refused.

Graves Dep. 31:11–32:10, Feb. 24, 2004. Although it is a close call, we believe that a reasonable jury could infer from this testimony that Graves was in the process of requesting an unpaid leave of absence to obtain an appointment with Dr. O'Connor and that Finch Pruyn cut off this request. This would be an inappropriate response under *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir.2000), which held that an employee's request for an accommodation triggers a duty on the part of the employer "to investigate that request and determine its feasibility," *id.* at 338. To the extent that the district court held against Graves the fact that "the record is unclear about whether or not Finch [Pruyn] was made aware of [Graves's] request [for more time]," Summ. J. Hr'g Tr. 36:18–19, June 2, 2005, the district court improperly drew inferences in Finch Pruyn's favor.[4]

Of course, to satisfy the third element of his prima facie case, Graves also must show that the requested unpaid leave of absence was a reasonable accommodation. The district court held that the contemplated leave of absence would not be a reasonable accommodation because it was indefinite. *Id.* at 36:23–24. On appeal, Finch Pruyn adopts the district court's reasoning, arguing that the indefinite nature of Graves's request renders it unreasonable.[5]

Viewing the record in the light most favorable to Graves, it was imprecise to call the requested leave of absence "indefinite." A factfinder could find, based on

---

4. We reject Finch Pruyn's contention that Graves is foreclosed from raising an argument premised upon a request for unpaid leave. Finch Pruyn contends that under Northern District of New York Local Rule 7.1(a)(3), Graves admitted that his only claim to reasonable accommodation was his October 2000 request for light duty. Putting aside the issue of how a rule designed to isolate factual disputes could directly limit legal claims, Finch Pruyn's argument fails because Graves did contest Finch Pruyn's assertion by contending in his reply Rule 7.1 submission that Finch Pruyn "should have extended to Plaintiff additional time in which to have his foot examined and treated by Doctor William O'Connor, a foot specialist and orthopedic surgeon in Saratoga, New York, as requested by Plaintiff." Pl.'s Resp. to Def.'s Local Rule 7.1(a)(3) Statement of Material Facts 15, June 1, 2004.

5. Finch Pruyn avoids the argument that an unpaid leave of absence is never a reasonable accommodation. This court has not had the occasion to address whether a finite unpaid leave of absence is a reasonable accommodation under the ADA. Cf. *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 9 (2d Cir.1999) (holding that the ADA does not require an employer to give an employee an indefinite leave of absence where there was no expectation that the employee would be able to return to work). Most other circuits and the Equal Employment Opportunity Commission have concluded that, in some circumstances, an unpaid leave of absence can be a reasonable accommodation under the ADA. *See, e.g., Humphrey v. Mem'l Hosps. Ass'n,*

Graves's testimony that he asked for "more time" to get a doctor's appointment and that it would take a "couple of weeks," see Graves Dep. 31:16, 32:8–9, Feb. 24, 2004, that Graves requested two weeks of leave—a finite amount of time—to see Dr. O'Connor and learn of his chances for rehabilitation. Granting this leave of absence would not require Finch Pruyn to hold open Graves's position indefinitely. See Parker, 204 F.3d at 338 ("The duty to make reasonable accommodations does not ... require an employer to hold an injured

employee's position open indefinitely ...."). The district court erred in rejecting Graves's claim on the basis that the requested leave was "indefinite," Summ. J. Hr'g Tr. 34:1, June 2, 2005, and accordingly, we vacate the grant of summary judgment as to this claim of disability discrimination.[6]

## 2. Reassignment

■ Graves further contends that as a reasonable accommodation in January

---

239 F.3d 1128, 1136 (9th Cir.2001); Garcia–Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 649–50 (1st Cir.2000); Cehrs v. Nw. Ohio Alzheimer's Research Ctr., 155 F.3d 775, 781–83 (6th Cir.1998); Haschmann v. Time Warner Entm't Co., 151 F.3d 591, 601 (7th Cir. 1998); see also 29 C.F.R. pt. 1630, app. at 356 (providing that a reasonable accommodation could include "unpaid leave for necessary treatment"). We note, however, that the idea of unpaid leave of absence as a reasonable accommodation presents "a troublesome problem, partly because of the oxymoronic anomaly it harbors"—the idea that allowing a disabled employee to leave a job allows him to perform that job's functions—"but also because of the daunting challenge of line-drawing it presents." Garcia–Ayala, 212 F.3d at 651–52 (O'Toole, J., dissenting).

But even Judge O'Toole would not read the ADA literally, requiring a reasonable accommodation to be effective immediately in enabling an employee to perform the essential functions of his or her job. Instead he allows, as have most courts, that "some leaves of absence might qualify as reasonable accommodations." Id. at 655; see Stephen F. Befort, The Most Difficult ADA Reasonable Accommodation Issues: Reassignment and Leave of Absence, 37 Wake Forest L.Rev. 439, 459 (2002) ("Courts, however, have found such a strict interpretation to be unreasonably narrow and impractical."). Because Finch Pruyn does not press this point, we address it no further.

6. Because we vacate on the basis of the district court's misidentification of Graves's leave request as "indefinite," we do not reach the question of how assured the employer must be of an employee's successful return following a proposed finite leave of absence in

order for the finite leave to be a reasonable accommodation. We note that courts considering this question have concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work. See, e.g., Humphrey, 239 F.3d at 1136 (identifying a "could have plausibly enabled [job performance]" standard for the reasonableness of a requested leave of absence); Walsh v. UPS, 201 F.3d 718, 726–27 (6th Cir.2000) (distinguishing the case of short and definite leave with a "reasonable prospect of recovery" from the case of indefinite leave with a vague medical opinion about recovery prospects); Haschmann, 151 F.3d at 601 (finding a short leave of absence reasonable in reliance on a doctor's stated optimism about its benefits); Criado v. IBM Corp., 145 F.3d 437, 440, 444 (1st Cir.1998) (holding that a jury could find that the employee's request for a short period of leave beyond her disability-leave allowance was reasonable where the employee's doctor was optimistic that the leave would "ameliorate her disability"); see also Garcia–Ayala, 212 F.3d at 655 (O'Toole, J., dissenting) (surveying the case law and observing that "[the leave] must be instrumental to effect or advance a change in the employee's disabled status with respect to the job, so that the employee is enabled to do it.").

On remand, Finch Pruyn should be allowed to move for summary judgment based upon insufficient assurance of Graves's successful return to work. At this stage, we decline to consider this argument without benefit of the district court's analysis. See generally Miranda v. Bennett, 322 F.3d 171, 175–76 (2d Cir.2003) (emphasizing that we are entitled to

2001, Finch Pruyn should have "reassigned" him to a new, sedentary desk job in the quality-assurance department rather than offering this position only as a temporary job for a few weeks to give Graves an income stream after his election of disability retirement. The ADA lists reassignment to an existing, vacant position as a possible reasonable accommodation, 42 U.S.C. § 12111(9)(B), but the ADA does not require creating a new position for a disabled employee, *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir.1999); *accord Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir.2004); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174–75 (10th Cir.1999) (en banc); *Still v. Freeport–McMoran, Inc.*, 120 F.3d 50, 53 (5th Cir.1997); *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995).

Graves concedes that the sedentary position he desired was created at his request after his election of disability retirement. Given that the ADA does not require creating a new position for Graves at all, we fail to see how it can dictate the duration of a new position that his employer created for him as a matter of grace. We hold that the ADA did not require Finch Pruyn to give Graves this new position for any longer than it did.

\* \* \*

For the foregoing reasons, we vacate the grant of summary judgment as to Graves's claim premised on a January 2001 request for an unpaid leave of absence, and we remand this case for further proceedings on that claim consistent with this opinion. We affirm the grant of summary judgment on Graves's claims premised on an October 2000 request for light duty and a January 2001 request for reassignment.

the district court's analysis of the issues be-

## II. Age Discrimination

■ Graves claims relief for age discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34. Because Graves presents no direct evidence of age discrimination, the court evaluates his ADEA claim under the *McDonnell Douglas* burden-shifting framework. *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir.2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Graves bears the initial burden to establish a prima facie case of age discrimination by showing that "[1] at the relevant time the plaintiff was a member of the protected class; [2] the plaintiff was qualified for the job; [3] the plaintiff suffered an adverse employment action; and [4] the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). The burden then shifts to Finch Pruyn to articulate a legitimate reason for the adverse employment action; thereupon, Graves bears the ultimate burden of showing that the proffered reason is a pretext for age discrimination. *Id.*

The district court held that there is no factual dispute about Graves's inability to show the second, third, and fourth elements of his prima facie case. On appeal, Graves argues that there is a factual dispute because a jury might view either of two younger paper inspectors, hired months before Graves's resignation, as Graves's replacement rather than the older

cause it informs our review).

paper inspector hired nineteen days after Graves's resignation. Graves also argues that he demonstrated the other elements of his prima facie case.

 We need not resolve these questions because even if Graves established genuine factual questions as to all elements of his prima facie case of age discrimination, he has not pointed to any record evidence to dispute Finch Pruyn's legitimate reason (so far as the ADEA is concerned) for the alleged adverse employment action—that Graves's disability prevented him from performing the essential job functions of a paper inspector. Although the ADA might prohibit adverse employment action against Graves on the basis of his disability, the ADEA protects only against discrimination motivated by age. 29 U.S.C. § 623. Because Graves has not pointed to any record evidence indicating that Finch Pruyn's legitimate reason for the alleged adverse employment action is a pretext, we affirm the grant of summary judgment to Finch Pruyn on Graves's ADEA claim.

Graves also claims that Finch Pruyn discriminated against him because he was denied the opportunity to have a more flexible job that Finch Pruyn gave to a younger paper inspector, 34–year–old Irene O'Keefe, after he left the company. O'Keefe suffered a knee injury in December 2000 and worked light duty from late January through March 2001. She then had surgery and later transferred into a job that was more sedentary. Even assuming that the failure to give Graves the same opportunity to compete for a more flexible position that was created some months after he left the company would be an adverse employment action, Graves has failed to raise an issue of fact that he was qualified for the position or that Finch Pruyn's legitimate nondiscriminatory rea-

sons for not considering him were pretextual.

## CONCLUSION

The judgment of the district court granting summary judgment to Finch Pruyn is affirmed in part and vacated in part, and the case is remanded for further proceedings.