08-4647-cv
CIEA v. Local Union No. 210, Laborers International Union of North America, AFL-CIO

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: September 2, 2009                    Decided: September 11, 2009)

Docket No. 08-4647-cv

CONSTRUCTION INDUSTRY EMPLOYERS ASSOCIATION and MCKINNEY DRILLING COMPANY,

*Petitioners-Appellees*,

v.

LOCAL UNION NO. 210, LABORERS INTERNATIONAL UNION OF NORTH AMERICA,
AFL-CIO,

*Respondent-Appellant*.

Before: CALABRESI, CABRANES, and HALL, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Chief Judge*) entered August 21, 2008 granting petitioners' motion to stay arbitration in a dispute arising under a collective bargaining agreement. Because the underlying dispute between petitioners and respondent union is jurisdictional, and because the collective bargaining agreement at issue expressly provides that jurisdictional disputes are not subject to arbitration, we hold that the underlying dispute is not arbitrable. We also hold that the District Court properly determined that it, and not an arbitrator, should determine whether the underlying dispute was arbitrable.

Affirmed.

1

ROBERT A. DOREN, Bond, Schoeneck & King, PLLC, Buffalo, NY, *for Construction Industry Employers Association and McKinney Drilling Company.*

JOHN A. COLLINS (Richard D. Furlong, *on the brief*),   , *for Local Union No. 210, Laborers International Union of North America, AFL-CIO.*

*Per Curiam*:

In this appeal, we consider whether (1) a dispute between a construction company and labor union is "jurisdictional" and therefore not subject to arbitration under a collective bargaining agreement and (2) the District Court properly determined that it, and not an arbitrator, should decide the issue of arbitrability with respect to the same dispute.

## BACKGROUND

The following facts are undisputed, except where otherwise noted. Petitioner-appellee Construction Industry Employers Association ("CIEA" or petitioner) is an association of employers performing construction work. Petitioner-appellee McKinney Drilling Company ("McKinney" or petitioner), a member of CIEA, is a construction company that specializes in, among other things, creating caissons, which are deep holes that are filled with concrete and rebar to create foundations for buildings. Relevant to this appeal, caissons may be created in two ways. When soil is sufficiently firm and stable, caisson work entails simply drilling deep holes into the ground and then filling them with concrete and rebar. However, if the soil is soft or unstable, caissons must be stabilized with steel pilings or braces.

CIEA has entered into a collective bargaining agreement ("Laborers CBA") with respondent-appellant Local Union 210, Laborers International Union of North America, AFL-CIO ("Laborers Union" or respondent). It has also entered into an agreement ("Carpenters CBA") with the United Brotherhood of Carpenters and Joiners of America, Local 289 ("the Carpenters Union").

2

As a member of CIEA, McKinney is bound by each of these agreements. Pursuant to them, the Carpenters Union and the Laborers Union each retain "jurisdiction" to perform certain forms of work on behalf of McKinney. If a union has "jurisdiction" over work covered in a CBA, then McKinney is obligated to hire members of the union to perform those tasks.

The Carpenters CBA provides that, when McKinney is performing certain types of work, it is bound by a collective bargaining agreement between Construction Pile Driving Employers and the Empire State Regional Council of Carpenters, who represent the Pile Drivers, Dock Builders, Divers, Trestle, Crib, and Breakwater Builders of the United Brotherhood of Carpenters and Joiners of America ("Pile Drivers CBA"). In turn, pursuant to the Pile Drivers' CBA, the following work is stated to fall within scope of work of the Carpenters Union:

> 3. *Drive and brace piling for caisson work.* Erect all concrete forms down from the cellar bottom and column base in cellar bottom, where such forms are directly attached to form a part of the capping or heading of piles or caissons. Erect all necessary shoring including ties and guardrails on elevated trestles. . . . All pile driving of . . . steel and/or concrete piles and sheeting pile for subway, sewer, tunnel and other engineering construction, also extraction of all piles, also all bracing of work listed in all subsections shall be the work of pile drivers.

> 10. Installation of *Caissons*, Piling, or Soldier Pile—A minimum of one (1) pile driver shall be placed with each drilling rig, when such rig is utilized for the installation of piling or caissons. To exclude drilling when temporary casings or permanent castings are not used.

J.A. 136, 138 (Pile Drivers' CBA, Art. IV, Secs. 3, 10) (emphasis added). McKinney has interpreted this provision of the Pile Drivers CBA to mean that it must hire members of the Carpenters Union to perform caisson work when soft or unstable soil requires that caissons be fortified with steel braces or pilings. Accordingly, in an effort to comply with the Pile Drivers CBA, McKinney has for years employed members of the Carpenters Union to perform this type of work.

On the other hand, pursuant to the Laborers CBA, McKinney workers who are members of

the Laborers Union also have the right to perform caisson work. Among other things, the following tasks are stated to fall to members of the Laborers Union:

> Excavating for building and all other construction, digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, *caissons*, cofferdams, dams, dikes and irrigation trenches, canals and all handling, filing, and placing of sandbags connected therewith. All drilling, blasting and scaling on the site or along the right-of-way, as well as access roads, resevoirs, including temporary lines.

J.A. 32 (Laborers' CBA, Art. II, Sec. 2(*l*)) (emphasis added). McKinney has interpreted this provision to mean that it must hire members of the Laborers Union to perform caisson work whenever soil conditions permit the work to be done without steel braces. McKinney has traditionally hired members of the Laborers Union to perform this type of work.

The dispute underlying this litigation arose in January 2008 after McKinney won contracts to perform caisson work at the Ford Stamping Plant in Woodlawn, New York ("Ford Plant"), and the NRG Energy Huntley Plant in Tonawanda, New York ("Huntley Plant"). Prior to drilling, McKinney tested the soil composition at each location to determine whether it was stable or unstable. After conducting its preliminary tests at the Ford Plant and the Huntley Plant, McKinney determined that, at each site, the soil was unstable and that it would need to use steel braces to stabilize the foundation. In accordance with its customary practice, and pursuant to the Pile Drivers CBA, McKinney hired members of the Carpenters Union to perform the work at each plant.

On or about January 29, 2008, Sam Capitano, an agent of the Laborers Union, contacted McKinney to express his view that McKinney should have hired members of Laborers Union to perform the work at the Ford and Huntley Plants. On March 10, 2008, the Laborers Union notified CIEA and McKinney that it intended to arbitrate the question whether, under the Laborers CBA, McKinney was required to hire members of the Laborers Union, instead of members of the Carpenters Union, for work at the Ford and Huntley Plants and for other caisson work where soft

4

or unstable soil required the use of steel braces or pilings. On March 17, 2008, CIEA and McKinney sent a letter to the Laborers Union in which it denied the union's grievance, citing McKinney's history of providing those jobs to the Carpenters Union in accordance with the Pile Drivers' CBA. More importantly for the instant matter, CIEA and McKinney took the position that the dispute was jurisdictional in nature and therefore excluded from the grievance and arbitration process under the Laborers CBA. In support of the latter claim, CIEA relied on Article XII, Section 7 of the CBA, which provided that "[d]isputes of jurisdictional nature shall not be subject to this grievance and arbitration procedure." J.A. 57 (Laborers' CBA Art. XII, Sec. 7). According to CIEA, Article XIII of the Laborers CBA, titled "Jurisdictional Disputes," *see* J.A. 57, provided only for negotiation of the issue.

On March 28, 2008, CIEA and McKinney filed in the United States District Court for the Western District of New York an application for a permanent stay of the arbitration proceedings commenced against them by the Laborers Union. The Laborers Union opposed the petition and counterclaimed to compel petitioners to arbitrate the grievance. Both sides agreed that, under the CBA, jurisdictional disputes were not subject to arbitration. The Laborers' Union argued, however, that the dispute between the parties was not "jurisdictional." Rather, according to the Laborers Union, the dispute concerned an alleged breach of the Laborers CBA whereby the Laborers Union simply sought to preserve work that it had traditionally done. The Union contended, and petitioners did not deny, that a dispute over "work preservation" would have to be resolved in a binding arbitration proceeding. The Laborers Union also argued that the arbitrator, rather than the District Court, should determine whether the dispute was jurisdictional in nature and whether the arbitrator was authorized to hear the grievance under the CBA.

Neither party filed a motion for summary judgment. However, at oral argument before the

District Court, each agreed that the proceeding was in the posture of cross-motions for summary judgment. In an August 20, 2008 Decision and Order, the District Court (Richard J. Arcara, *Chief Judge*) granted the motion of petitioners and denied the Laborers Union's motion, holding that (1) the underlying dispute was indeed "jurisdictional" and therefore not subject to arbitration under the Laborers CBA and (2) the District Court, not the arbitrator, should properly determine whether the parties had contracted to arbitrate the dispute. *See* J.A. 217-230 (*Constr. Indus. Employers Ass'n v. Local Union 210, Laborers Int'l Union of N. Am.*, No. 08-cv-260A (W.D.N.Y. Aug. 20, 2008)).

The Laborers Union filed this timely appeal.

## DISCUSSION

On appeal, the Laborers Union challenges each of the District Court's holdings. Specifically, it contends that the underlying dispute is not in fact "jurisdictional" but, rather, is subject to arbitration because it concerns the Union's "preservation of work" traditionally performed under the Laborers CBA or, alternatively, the right of the Laborers Union, pursuant to the Laborers CBA, to represent employees engaged in the type of caisson work at issue. Further, the Laborers Union argues that the District Court erred in ruling on the issue of arbitrability and instead should have deferred to the arbitrator.

We review the District Court's grant of summary judgment *de novo*, construing all facts in favor of the respondent, Laborers' Union. *See, e.g.*, *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183 (2d Cir. 2006). Summary judgment is warranted only upon a showing "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We agree with the District Court that the underlying dispute in this case "fit[s] into the classic definition of a jurisdictional dispute," J.A. 226 (quoting *Tishman Constr. Corp. v. Muccioli*, No. 07 Civ. 0888 (JGK), 2008 WL 426229, at *3 (S.D.N.Y. Feb. 15, 2008) (internal quotation marks

6

omitted) (brackets omitted)), because it concerns the competing claims of two unions seeking to perform the same work for an employer. As the Supreme Court has explained, a jurisdictional dispute, unlike other disputes involving breach of a collective bargaining agreement, is "between two or more groups of employees over which is entitled to do certain work for an employer." *N.L.R.B. v. Radio & Television Broad. Eng'rs Union*, 364 U.S. 573, 579 (1961). In a jurisdictional dispute, "the employer has been placed in a situation where he finds it impossible to secure the benefits of stability from either of [the collective bargaining agreements], not because he refuses to satisfy the unions, but because the situation is such that he cannot satisfy them." *Id.* at 582. As the District Court aptly stated, an employer involved in a jurisdictional dispute is "caught in the middle" of "a disagreement between two unions over the performance of work" and "has little preference for who completes the work 'if the other will just let him alone.'" J.A. 226 (quoting *Radio & Television Broad. Eng'rs Union*, 364 U.S. at 579).

The Laborers Union's efforts to characterize the dispute as either one of "work preservation" or representational rights are unavailing. First, it did not establish a claim for work preservation because it failed to present any evidence that it had ever performed caisson work for McKinney when the job called for the use of steel pipes. *See Int'l Ass'n of Machinists & Aerospace Workers, District 190, Local Lodge 1414*, 344 N.L.R.B. 1018, 1020 (2005) (characterizing a claim as one of "work preservation" where evidence demonstrated that members of a union had "historically performed" a particular type of work). Indeed, while the Laborers Union adduced no evidence on the subject, petitioners presented an affidavit from McKinney's District Manager stating that "[f]or at least 30 years in Western New York in situations where a pipe needs to be used when drilling a caisson, McKinney has always assigned the disputed work to [the] [C]arpenters [Union]." J.A. 17 (Howe Aff. ¶ 12). Moreover, the record does not lend any support to the Laborers Union's claim

7

that,September 10, 2009 rather than being jurisdictional in nature, the underlying dispute actually concerns its exercise of previously recognized representation rights to perform a certain type of caisson work.

Finally, we reject the Laborers Union's argument that an arbitrator, rather than the District Court, should decide whether the dispute is "jurisdictional" and therefore not subject to arbitration under the CBA. The Supreme Court has held that "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Based on this principle, the Supreme Court has explained that "[u]nless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* (emphasis added); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964) (holding that, because the duty to arbitrate is "of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty"). In the instant case, the Laborers Union points to no language in the CBA—and we see none—indicating that the parties clearly and unmistakably agreed to settle disputes of arbitrability through arbitration.

## CONCLUSION

For reasons stated above, the August 21, 2008 judgment of the District Court is AFFIRMED.