George GRAVES, Plaintiff–Appellant,

v.

**FINCH PRUYN & COMPANY, INC., Defendant–Appellee.**

No. 09–1444–cv.

United States Court of Appeals, Second Circuit.

Nov. 17, 2009.

Nathaniel B. Smith, Law Office of Nathaniel B. Smith, New York, N.Y., for Plaintiff–Appellant.

Michael T. Wallender, Couch White, LLP, Albany, N.Y., for Defendant–Appellee.

PRESENT: PIERRE N. LEVAL, B.D. PARKER and DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant George Graves ("Graves") appeals from an order of the United States District Court for the Northern District of New York (Sharpe, J.) entered March 27, 2009, granting summary judgment to Defendant–Appellee Finch Pruyn & Company, Inc. ("Finch") on Graves's claim of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). We summarized the facts of the underlying dispute in our previous opinion in this case, *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181 (2d Cir.2006) ("*Graves I*"). In that opinion, we determined that a material issue of fact existed as to whether Graves requested an unpaid leave of absence from his job with Finch for two weeks to obtain an appointment with an orthopedic surgeon, Dr. William O'Connor, for an examination of his foot. *Graves I*, 457 F.3d at 184–86. We remanded to the district court indicating that Finch should be allowed to move for summary judgment on the question of whether the accommodation Graves sought provided "insufficient assurance of Graves's successful return to work." *Id.* at 186 n. 6. The district court determined that the two weeks unpaid leave sought by Graves was not a reasonable accommodation given Finch's prior accommodations of Graves, because Graves had made no showing that

the accommodation would likely result in his return to work, and because Graves's further absence would cause Finch a business hardship. *Graves v. Finch Pruyn & Co., Inc.*, No. 1:03–CV–266, 2009 WL 819380, at *1 (N.D.N.Y. Mar. 27, 2009). We are now faced with the question whether Graves has shown that granting him the requested leave time would have been a "reasonable accommodation" that allowed him to perform the essential functions of his job as a paper inspector. *Graves I*, 457 F.3d at 185.

■ "We conduct de novo review of the district court's award of summary judgment, construing the evidence in the light most favorable to the non-moving party." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.2004). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the record as a whole indicates that no rational factfinder could find in favor of the non-moving party. *Id.*; *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001). We examine claims of disability discrimination brought under the ADA according to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff's initial burden is to produce evidence showing a prima facie case of disability discrimination. *Graves I*, 457 F.3d at 183–84. This burden requires a plaintiff to show that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Rodal*, 369 F.3d at 118; *see also* 42 U.S.C. § 12111(8) (defining a "qualified individu-

al" with a disability as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). The only issue in this appeal is the third prong of this test, whether Graves made a prima facie showing that with reasonable accommodation he could perform the essential functions of his job. It is undisputed that without accommodation, at the time of his leave request Graves could not perform the essential functions of a paper inspector, which included standing on his feet for long periods of time and lifting and pushing large rolls of paper. *Graves I*, 457 F.3d at 184; *Graves*, 2009 WL 819380, at *1.

We have never expressly held that leaves of absence from an employee's job taken in order to recover from the employee's disability are "reasonable accommodations" under the ADA. Even assuming that they can be under certain circumstances, however, they must enable the employee to perform the essential functions of his job. *See* 42 U.S.C. § 12111(8); *Rodal*, 369 F.3d at 120. Moreover, the employee must make a showing that the reasonable accommodation would allow him to do so at or around the time at which it is sought. *See Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995) ("[R]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question."); *cf. McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97–98 (2d Cir.2009) (plaintiff claiming that reassignment was reasonable accommodation must demonstrate that vacant position existed at or within a reasonable amount of time after accommodation was sought).

■ We conclude that Graves failed to make a prima facie case that his requested

accommodation of two weeks' unpaid leave in order to consult with Dr. O'Connor was reasonable because he made no showing that Finch at the time of the request had any assurance whatsoever that the accommodation would allow Graves to perform the essential functions of his job. Finch focuses on the January 10, 2001 report of one of Graves's doctors, David G. Welch, which indicated that Graves would not be able to return to his job "in the foreseeable future" and declared that "[Graves] is totally incapable of performing his job as a paper inspector." J.A. 29–30. Graves testified, however, that this report was made in order to allow him to qualify for a disability retirement option, and that Finch's Director of Human Resources, Michael Strich, had told him on January 4 to have a doctor state that Graves was totally disabled in order to qualify. A reasonable jury could find that the January 10 report, therefore, did not accurately state whether Graves was "qualified" to "perform the essential functions" of his job with a reasonable accommodation.

However, Dr. Welch's January 4, 2001 report, which was sent to Strich, indicated unequivocally that "it is unlikely that [Graves] will be able to return to his previous occupation." J.A. 27. With regards to consulting Dr. O'Connor, Dr. Welch indicated that even with surgery "it is likely that it will take another two to three months of recovery following such surgery before [Graves] could return to any kind of gainful employment" and that even if such recovery took place, "there will probably [be] some restrictions in the amount of standing, walking, lifting, and carrying that he can do." *Id.* Although Graves points to other statements of his doctors indicating that consulting Dr. O'Connor might in general be helpful, Dr. Welch's report gave no assurance at all that the results of that consultation would allow Graves to continue performing his job.

Moreover, that Dr. O'Connor was able to treat Graves's disability Graves's retirement date of February 1, 2001, on which Graves relies heavily, is irrelevant to the question of whether the accommodation was reasonable at the time it was sought. *See McBride,* 583 F.3d 92, at 97–98; *Jackan v. N.Y. Dep't of Labor,* 205 F.3d 562, 567 (2d Cir.2000). We therefore conclude that the evidence as a whole did not give Finch any assurance that Graves's requested accommodation would allow him to perform the essential functions of his job.

Graves's attempts to avert this conclusion are unavailing. First, he contends that Finch, by rejecting his suggested accommodation without investigation, failed sufficiently to engage in an interactive process to find an accommodation that would allow Graves to continue working. Even assuming that Finch did not engage in the interactive process, however, we recently held that an employee may not rely on a company's failure to engage in an interactive process if he cannot also make a prima facie showing that a reasonable accommodation existed at the time of the adverse employment action. *McBride,* 583 F.3d 92, at 99–101. Second, Graves contends that Dr. Welch's reports are inadmissible hearsay. This is incorrect: the medical reports were offered (by both sides) to prove Finch's state of mind when it considered Graves's requested accommodation. *See Capobianco v. City of New York,* 422 F.3d 47, 55–56 (2d Cir.2005).

We have considered Graves's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.