**Wilfredo REYES, Plaintiff,**

**v.**

**KRASDALE FOODS, INC. and Bernie Patton, Individually, Defendants.**

**No. 12 CV 1595(VB).**

United States District Court,
S.D. New York.

May 22, 2013.

William Kerry Phillips, Marjorie Mesidor, Phillips & Phillips, Attorneys at Law, PLLC, New York, NY, for Plaintiff.

Jean L. Schmidt, Littler Mendelson, P.C., New York, NY, for Defendants.

### *MEMORANDUM DECISION*

BRICCETTI, District Judge.

Plaintiff Wilfredo Reyes brings this action alleging defendant Krasdale Foods, Inc. ("Krasdale"), his former employer, discriminated against him based on disability, and retaliated against him, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiff also alleges Krasdale and defendant Bernard Patton, Krasdale's Director of Human Resources, discriminated against him based on disability, and retaliated against him, in violation of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*

The core of plaintiff's complaint is that defendants improperly denied his request to shift his schedule forward by thirty minutes, from a 9:00 a.m. to 5:30 p.m. shift, to a 8:30 a.m. to 5:00 p.m. shift. Defendants move for summary judgment on all claims. (Doc. # 21). For the following reasons, the motion is GRANTED.[1]

---

1. Defendants urge the Court to grant summary judgment in their favor because plaintiff

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, statements of facts, and declarations with supporting exhibits, which reflect the following factual background.[2]

On October 8, 2008, plaintiff began working as a technician in Krasdale's Information Technology ("IT") department. In that capacity, plaintiff assisted Krasdale employees with issues related to computer hardware, software, and applications.

Arthur Gibbs supervised the IT department's six technicians, including plaintiff. The technicians generally worked staggered shifts between 8:00 a.m. and 5:30 p.m. Plaintiff worked from 9:00 a.m. to 5:30 p.m., with a one hour unpaid lunch period.

Beginning in November 2010, plaintiff began seeing Dr. David L. Burns to manage plaintiff's Type 1 Diabetes. Burns directed plaintiff to take an injection of long-acting insulin at bedtime each night, and an injection of short-acting insulin around meal times each day. Although Burns does not recall exactly what he told plaintiff, Burns testified at his deposition that he generally advises patients to take the injections either up to thirty minutes before a meal or within two hours after one. Burns further testified he does not tell patients when to take meals and injections, but rather directs patients to modify their meal and injection schedule to achieve the best results.

Consistent with Burns's advice, plaintiff experimented with his insulin injection and meal schedule. But plaintiff struggled to find a schedule where he would not feel ill. During July and August 2011, plaintiff says he would "often become sick on [his] way home from work," at which point he would be forced to pull over the car to rest.

Beginning at some point in August 2011, plaintiff found the best results when he administered the injections each day at 6:00 a.m., 12:00 p.m., 6:00 p.m., and 12:00 a.m., and ate meals thirty minutes after each of the first three injections. It took plaintiff approximately ten minutes to test his blood sugar and administer an insulin injection; he was able to administer the 12:00 p.m. injection at work, but, after leaving work at 5:30 p.m., he administered the 6:00 p.m. injection in his car while driving home.

On Friday, August 5, and Monday, August 8, 2011, plaintiff arrived at work thirty minutes early and began working without authorization. On August 8, after

untimely filed his opposition papers. The Court declines defendants' request. First, defendants must meet their burden under Rule 56 even if plaintiff did not oppose their motion. *See Vt. Teddy Bear Co. v. 1–800 BEAR-GRAM Co.*, 373 F.3d 241, 244 (2d Cir.2004). Second, defendants articulate no prejudice from plaintiff filing his opposition papers approximately six hours late.

2. Plaintiff asks the Court to disregard paragraphs 1–4, 9, 18–22, 34, 45–46, 49, and 52–53 of defendants' Local Rule 56.1 statement of material facts because he contends they are immaterial, unclear, argumentative, improperly restate deposition testimony, or frame legal conclusions as fact. *See* Local Civ. R. 56.1 ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed.R.Civ.P. 56(c)."); *Epstein v. Kemper Ins. Cos.*, 210 F.Supp.2d 308, 314 (S.D.N.Y.2002) (disregarding Local Rule 56.1 statement's conclusory, argumentative, and unsupported assertions). Upon reviewing these challenged paragraphs, the Court finds it may consider them because they are properly formulated and cite to admissible evidence.

Gibbs asked plaintiff why he was coming in early, plaintiff informed Gibbs of his medical issues. Plaintiff then asked Gibbs to shift his work schedule thirty minutes earlier—to 8:30 a.m. to 5:00 p.m. Plaintiff also requested a meeting with Patton, Krasdale's director of human resources.

At some point thereafter, Patton met with Simon Barker, Gibbs's supervisor, to discuss plaintiff's request. Barker informed Patton that changing plaintiff's schedule would be "disruptive," because Barker had arranged the schedules of the IT department's technicians to provide coverage throughout the day. As an alternative, Barker proposed to Patton that plaintiff shift his schedule one hour earlier—to 8:00 a.m. to 4:30 p.m.—to accommodate plaintiff and "facilitate better services to Krasdale's end users."

Later that day, plaintiff met with Patton to discuss plaintiff's proposed schedule change. Patton asked plaintiff about the treatment and medications he was using, and the symptoms he experienced. Patton also asked plaintiff for medical reasons, beyond his diagnosis as a Type 1 diabetic, why Krasdale should accommodate his request. Patton explained that he needed plaintiff's doctor to spell out why Krasdale needed to accommodate plaintiff. Plaintiff states Patton was "hostile, agitated and red in the face," and "shouted at Plaintiff, demanding the details of Plaintiff's medical condition, [and] indicating that no accommodation was needed." The parties agree Patton told plaintiff that Barker believed the accommodation would be "disruptive," but they disagree about whether Patton discussed with plaintiff Barker's proposed one-hour (rather than thirty minute) accommodation.

The following day, August 9, plaintiff emailed Steve Laskowitz, Krasdale's Chief Information Officer. Plaintiff informed Laskowitz about his disability and his request for an accommodation. Plaintiff wrote Patton had "drilled" him, and had asked plaintiff "to provide full details on [his] illness to provide a better medical explanation for [his] accommodation request." Plaintiff believed this was improper because, under the ADA, Krasdale could only ask plaintiff whether he needed an accommodation, and, if so, what type of accommodation he needed. Nonetheless, plaintiff told Laskowitz he "will provide a letter from [his] Doctor in which [the doctor] only needs to verify that [plaintiff is] a Type 1 Diabetic in need of accommodation. No other details are needed."

At some point, plaintiff provided Krasdale with a letter from Dr. Burns dated August 8, 2011.[3] In the letter, Burns requested that Krasdale "[p]lease accommodate Mr. Reyes' working hours while we adjust his medications and find the right treatment that will stabilize his health."

On August 30, Patton spoke with plaintiff to clarify what Burns meant by "accomodat[ing] plaintiff's] working hours." Based on that conversation, Patton understood that plaintiff needed flexibility to leave work occasionally to attend doctor's appointments. Plaintiff, however, states that was "not [plaintiff's] understanding, nor did [he] ever tell Defendant Patton, that Dr. Burns's note meant that [plaintiff] would need time off from work for medical appointments."

Plaintiff adjusted his meal and injection times after defendants rejected his proposed accommodation, but plaintiff was unable to obtain the same results as when he took the injections at 6:00 a.m., 12:00 p.m.,

---

**3.** Plaintiff says Patton received the letter on August 8, 2011, but defendants say plaintiff provided the letter to Gibbs on or about Au-

gust 22, 2011. For the reasons discussed below, this disagreement is immaterial.

6:00 p.m., and 12:00 a.m. As a result, plaintiff says, after August 8, he repeatedly renewed his request to change his working hours to 8:30 a.m. to 5:00 p.m. Plaintiff also says he did not request time off for doctor's appointments or illness during September and October 2011, because he did not want to be docked pay. Patton responds that plaintiff never asked him for such an accommodation. Patton also provides five emails where plaintiff requested, and was granted, time off for doctor's appointments or illness between September 12, 2011, and October 10, 2011, and Patton notes Krasdale paid plaintiff for the hours he worked after he exceeded his allotment of sick time, but Krasdale did not pay plaintiff for hours he did not work.

Sometime after August 8, plaintiff submitted a charge of discrimination to the Equal Employment Opportunity Commission.[4] In the charge, plaintiff recounted that Patton had asked plaintiff for a medical reason why he needed to revise his schedule by thirty minutes, rather than changing when he took his insulin. Plaintiff repeated his belief that the ADA permitted Patton to ask only whether plaintiff needed an accommodation and, if so, what type, and noted he believed it improper for Patton to ask for details about plaintiff's private medical issues. Plaintiff further wrote that his "medical condition does not stop [him] from doing [his] job, [he] just needed a slight change of schedule."

In mid-October 2011, plaintiff met with Gibbs and Barker for his annual performance review. At some point during the meeting, plaintiff says he informed them that, "due to [Krasdale's] unwillingness" to modify his schedule by thirty minutes, plaintiff "felt [he] had no choice but to leave [his] position." Plaintiff then re-

turned his building access card and left the building. He did not appear for work again and did not contact Gibbs, Barker, or Patton. One week later, Patton wrote plaintiff a letter indicating Krasdale was terminating plaintiff's employment because he had abandoned his position.

Thereafter, plaintiff commenced this suit.

### DISCUSSION

I. *Standard of Review*

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *See id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 60 (2d Cir.2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Za-*

---

4. Plaintiff's letter to the EEOC is dated August 9, 2011, but plaintiff states he filed the charge on September 12, 2011. As the Court discusses below, this disagreement is immaterial.

laski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548. If the non-moving party submits evidence which is "merely colorable," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir.2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir.2011). If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir.2004).

## II. *ADA Discrimination Claim*

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to ... the hiring, advancement, or discharge of employees, ... and other terms, conditions, and privileges of em-

ployment." 42 U.S.C. § 12112(a). Under the ADA, unlawful discrimination includes failure to provide a reasonable accommodation to an employee's known disability. *See, e.g., Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir.2008) (citing 42 U.S.C. § 12112(b)(5)(A)).

Claims alleging failure to accommodate under the ADA are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006)). Under that framework, a plaintiff must first establish "a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following: '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Id.* at 96–97 (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir.2006)).

If plaintiff establishes a prima facie case, the burden shifts to defendant to rebut a presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse action, *i.e.* failing to accommodate plaintiff. *See id.* at 102; *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d at 169. If defendant does so, the presumption of discrimination drops out and the burden shifts back to plaintiff to show defendant's reason is pretext for unlawful discrimination. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d at 96. "In all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff was rejected under circumstances which give

rise to an inference of unlawful discrimination." *Aulicino v. N.Y.C Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir.2009) (internal quotation marks omitted).

The parties agree plaintiff is disabled under the ADA, Krasdale is covered by the ADA, Krasdale knew of plaintiff's disability, modifying plaintiff's schedule qualifies as a reasonable accommodation, and Krasdale refused to modify plaintiff's schedule. The parties dispute whether plaintiff needed the accommodation to perform the essential elements of his job: plaintiff contends he was unable to complete his job without an accommodation because he needed to administer an injection at home at 6:00 p.m. to avoid becoming dizzy and nauseas; Krasdale argues plaintiff did not provide medical evidence showing the schedule change was necessary, and thus plaintiff could complete his job without the change.

■ The record at summary judgment shows plaintiff plainly failed to provide Krasdale sufficient medical information to determine whether his requested accommodation was necessary. The only medical evidence plaintiff provided Krasdale was the letter from Dr. Burns, which requested that Krasdale "accommodate [plaintiff's] working hours." In his opposition papers, plaintiff contends Burns's request meant Krasdale should "modify[ ] Plaintiff's work schedule for whatever variety of reasons to attend to Plaintiff's condition." But plaintiff bases this contention on an out-of-context reading of an attorney's question posed to Burns at his deposition. (*See* Burns Dep. at 51:6–52:10).[5] Burns's letter did not state plaintiff's work schedule should be modified "for whatever variety of reasons" plaintiff may need—it requested only that Krasdale "accommodate [plaintiff's] working hours." Burns clarified at his deposition that he meant Krasdale should accommodate plaintiff "if [plaintiff] needed *time off* for doctors' visits," including visits to specialists. (*Id.* 51:14 (emphasis added)). At no point did Burns indicate to Krasdale, directly or through plaintiff, that his letter related to modifying plaintiff's schedule.

Moreover, although Burns advised plaintiff to alter his meal and injection schedule to achieve the best results, the summary judgment record does not show plaintiff provided Krasdale any evidence (or even an indication) of Burns's advice. Instead, plaintiff repeatedly informed Krasdale that he believed he was not obligated to provide details about his medical condition. In sum, the summary judgment record shows plaintiff did not provide Krasdale with medical evidence to support his request to leave work at 5:00 p.m.

To withstand a motion for summary judgment, plaintiff "must do more than simply declare ... that [his] diabetes requires [the accommodation he seeks]. [He] must provide expert medical evidence to that effect and [ ]he has provided no such evidence." *Callistro v. Cabo*, 2013

---

**5.** The relevant portion of Burns's deposition is as follows:

Q: Okay. Now, the next sentence in that second paragraph [of the August 8 letter] reads, "Please accommodate Mr. Reyes's working hours while we adjust his medications and find the right treatment that will stabilize his health." What was your intention and what did you mean by that sentence?

A: If he needed time off for doctors' visits, specialists, you know.., I don't like to coerce patients to do things like that, but I realized that he might need to take time off to see specialists, eye examines [sic] that diabetics should have regularly, things like that. So—but I don't think I meant anything particularly deep or meaningful besides that.

Q: Okay. So that was related to taking time off from work for whatever variety of reasons to attend to his condition; correct?

A: Correct.

WL 322497, at *10, 2013 U.S. Dist. LEXIS 11176, at *27–30 (S.D.N.Y. Jan. 25, 2013) (granting summary judgment when diabetic plaintiff failed to provide medical evidence showing requested accommodation was necessary to perform job functions); *see also Inikoff v. New York State Div. of Human Rights,* 83 A.D.3d 1159, 1163, 920 N.Y.S.2d 458 (3d Dep't 2011) (granting summary judgment when plaintiff and his doctor did not explain, before plaintiff's termination, how each proposed accommodation would address plaintiff's condition); U.S. Equal Employment Opportunity Commission, http://www.eeoc.gov/laws/types/disability.cfm (last visited May 21, 2013) ("Once a person is hired and has started work, an employer generally can only ask medical questions ... if the employer needs medical documentation to support an employee's request for an accommodation.").

Accordingly, as a matter of law, plaintiff cannot meet his burden to establish a prima facie case of discrimination based on a failure to accommodate.[6] *See Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (U.S.2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[7]

### III. *ADA Retaliation Claims*

The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). This anti-retaliation provision seeks to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [the ADA's] basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. at 61–63, 126 S.Ct. 2405. The anti-retaliation provision covers a broad range of employer conduct, prohibiting any activity that might "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 126 S.Ct. 2405.

Retaliation claims under the ADA are also evaluated under the *McDonnell Douglas* burden-shifting framework. *See Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir.2001). To establish a prima facie case of retaliation under the ADA, plaintiff must show: (1) he was engaged in a protected activity under the ADA; (2) the employer was aware of the activity; (3) he suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999).

■ Plaintiff contends Krasdale retaliated against him for filing an EEOC

---

**6.** Even if plaintiff could satisfy his prima facie burden, he provides no evidence from which a jury could infer Krasdale's legitimate nondiscriminatory reason for rejecting his requested accommodation—ensuring adequate IT technician coverage—is pretext for unlawful discrimination. *See McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d at 96, 102; *Aulicino v. N.Y.C. Dep't of Homeless Servs.,* 580 F.3d at 80.

**7.** Because the Court finds plaintiff has not established a prima facie case of discrimination under the ADA, it need not discuss the sufficiency of the interactive process. *See McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d at 100–01 (2d Cir.2009) (noting an insufficient interactive process, without more, does not establish a prima facie case of discrimination under the ADA).

charge by denying his repeated requests to change his schedule, which made his job intolerable and left him "no choice but to resign." Assuming for purposes of this motion that plaintiff has satisfied the first three elements of a prima facie case, he contends a causal connection can be inferred because approximately one month elapsed between filing the charge on September 12, 2011, and his constructive discharge in mid-October 2011. *See Jimenez v. City of N.Y.*, 605 F.Supp.2d 485, 528 (S.D.N.Y.2009) (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 86 (2d Cir. 1990)) (noting causation generally inferred when fewer than three months elapse between protected activity and retaliation). But a causal connection cannot be inferred between protected activity and adverse action, despite close temporal proximity, when an employer acts the same way both before and after the protected activity. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam); *Ramsey v. City of N.Y.*, 2009 WL 637157, *9, 2009 U.S. Dist. LEXIS 19562, at *29 (S.D.N.Y. Mar. 10, 2009) ("An inference of retaliation does not arise when a plaintiff has been subject to a series of adverse employment actions that began before the plaintiff engaged in the protected conduct, even if the protected conduct and the adverse employment decisions were temporally proximate." (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001))).

 Here, the undisputed record is that Krasdale denied plaintiff's accommodation request before he filed his EEOC charge, and similarly denied his subsequent requests after he filed the charge. Accordingly, as a matter of law, plaintiff cannot meet his burden to show a sufficient causal connection between the protected activity and any adverse employment action.

## IV. *NYSHRL Claims*

Having dismissed plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining NYSHRL claims against Krasdale and against Patton individually. 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.

The Clerk is instructed to terminate this motion and close this case. (Doc. # 21).

SO ORDERED.