Frank ZITO, Plaintiff,

v.

Patrick R. DONAHOE, Postmaster General of the United States Postal Service, Defendant.

No. 10 Civ. 2223(VM).

United States District Court, S.D. New York.

Dec. 20, 2012.

**442**

Frank Zito, Brooklyn, NY, pro se.

Leslie A. Ramirez–Fisher, United States Attorney's Office, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se plaintiff, Frank Zito ("Zito"), brought this action against defendant Patrick R. Donahoe ("Donahoe"), Postmaster General of the United States Postal Service ("USPS"), alleging claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., ("Rehabilitation Act"). Zito also alleges several claims that do not arise under the Rehabilitation Act, specifically that he was denied compensation and that he suffered injury to his reputation due to actions taken by the USPS. USPS now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND [1]

Zito worked for the USPS as an electronic technician from June 1991 to April 2007. From 1991 to 1993, Zito worked at the USPS Church Street Station ("Church Street"). From 1993 to July 2005, Zito

---

1. References to "Ramirez–Fisher Decl. Ex. ___" are to the Exhibits attached to the May 9, 2012 Declaration of AUSA Leslie A. Ramirez–Fisher. References to "I. Chow Decl." are to the Jan. 12, 2012 Declaration of Dr. Irene Chow. References to "Rutigliano Decl." are to the December 30, 2011 Declaration of Giaco-mo Rutigliano. References to "Miles Decl." are to the December 30, 2011 Declaration of Reginald Miles. References to "Chung Decl." are to the December 30, 2011 Declaration of Wai T. Chung. References to "Pl. Aff." are to Zito's June 25, 2012 Affirmation Opposing Defendant's Motion for Summary Judgment.

worked at the USPS Grand Central Station ("Grand Central"). In July 2005, Zito was reassigned to the Morgan Processing and Distribution Center ("Morgan"), where he was initially assigned to Tour 2 (the 8:00 a.m. to 4:00 p.m. shift). On October 15, 2005, Zito was reassigned to Tour 1 (the 12:00 a.m. to 8:00 a.m. shift), where he remained until he resigned on April 21, 2007.

On December 21, 1990, prior to the start of his assignment at Church Street, Zito underwent a medical examination, conducted by Dr. Irene Chow ("I. Chow"). I. Chow referred Zito to a cardiologist for further examination. (*See* I. Chow Decl. ¶ 7; Ramirez–Fisher Decl. Ex. 11 (Gov. 285)). Dr. Norman Shaftel ("Shaftel") examined Zito. After consulting with Shaftel, I. Chow concluded that Zito should do "no heavy lifting and no strenuous work." (Ramirez–Fisher Decl. Ex. 11 (Gov. 87); *See also* I. Chow Decl. ¶ 7). I. Chow marked that Zito had "heart disease with restriction or limitation of activity" corresponding to "Disability Code 81." (Ramirez–Fisher Decl. Ex. 11 (Gov. 288)). These findings were reported in Zito's Medical Examination & Assessment form, PS Form 2485. (*See Id.*)

Thomas Caparro ("Caparro") was Zito's first line supervisor at Grand Central. Upon beginning work at Grand Central, Zito informed Caparro that he had some work restrictions due to his heart condition. Caparro accommodated Zito's work restrictions by assigning Zito duties that did not require heavy lifting. Because Zito was able to complete all duties assigned to him with that accommodation, Caparro never asked Zito for medical documentation in support of his work restrictions.

On December 20, 2000, Caparro sent a letter to Kingsboro Medical Center requesting documentation of Zito's heart condition in order to register Zito under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. On the same day, Zito submitted a letter, with a doctor's note, requesting "light duty." That request was granted. Caparro did not ask for further documentation in support of Zito's work restrictions until December 2004, when Caparro presented Zito with a letter requesting updated documentation in accordance with USPS's new "light duty policy" which required "current" medical documentation to support light duty assignments. (*See* Ramirez–Fisher Decl. Ex. 15 (Gov. 489)). Zito refused to sign this letter or acknowledge its receipt. On January 3, 2005, Zito submitted a letter addressed generally to USPS in which he asserted his entitlement to accommodations in his work assignments, and cited the records of the 1990 pre-employment exam as support for that claim. (*See* Ramirez–Fisher Decl. Ex. 5 (Gov. 526)).

In July 2005, Zito was transferred to Morgan and was assigned to Tour 2. On the first day of his new assignment, Zito presented his new supervisor, Ronald Gonzalez ("Gonzalez"), with the January 3, 2005 letter. He then requested that Gonzalez provide accommodations consistent with Dr. I. Chow's findings as reflected in the 1990 PS Form 2485.

Neither Gonzalez nor Sadhoo Ramrup ("Ramrup"), another Tour 2 supervisor, had any familiarity with Zito's previously submitted medical documentation, nor with the meaning of "disability code 81." Gonzalez presented Zito with PS Form 3956, asking him to submit to a Fitness for Duty Examination ("FFDE"). Both Gonzalez and Ramrup testify in their sworn declarations that the goal of this FFDE was to verify Zito's claim of health restrictions. While the results of this examination were pending, Gonzalez and Ramrup honored Zito's request for accommodation.

On August 10, 2005, Zito was examined by Dr. Susan Chow ("S. Chow"). S. Chow found that Zito had a heart murmur and she instructed him to provide updated medical information from his cardiologist. S. Chow gave Zito a form requesting documentation regarding the cause of his heart disease, the current status of his heart condition, information about prescribed medication, treatment plans, and any specific limitations or restrictions on his work. He was instructed to return to S. Chow on September 21, 2005 with the updated documentation. S. Chow provided Zito with a form letter to give to his doctor listing the specific documentation requested. (*See* Ramirez–Fisher Decl. Ex. 8 (Gov. 306)).

On September 21, 2005, Zito informed S. Chow by phone that he had left the form letter with his cardiologist, but Zito refused to answer any questions about whether he was planning to see the cardiologist or when he would deliver the requested documentation to S. Chow. Zito repeated that he did not want to answer any questions on the matter before speaking to his union representative at the time, Phil Rosso ("Rosso").

For the rest of Zito's time working on Tour 2 at Morgan, he was given assignments without regard to any work restrictions or accommodations. Zito adjusted his workflow accordingly. For example, rather than carry his entire toolbox, Zito carried only the tools he needed with him. Whenever Zito was unable to complete an assignment, he marked his assignment sheets to reflect this inability and returned them to his supervisor. Zito admits that he was never asked to complete assignments that he marked incomplete, though he claims he was given a "hard time" occasionally.

Gonzalez and Ramrup continued to tolerate Zito's refusal to perform certain tasks, though Ramrup reminded Zito of his obligation to provide medical documentation. On October 4, 2005, Ramrup conducted a Preliminary Disciplinary Interview ("PDI") to determine why Zito refused to provide medical documentation. At Rosso's advice, Zito refused to answer any questions at the PDI. On October 21, 2005, Ramrup issued a "Letter of Warning" to Zito for failing to complete certain assignments even though he continued to refuse to provide medical documentation in support of his claim for accommodation. No further disciplinary action was taken.

Zito filed two grievances with the USPS regarding this chain of events. The first concerned Gonzalez's 2005 request for a FFDE. The second grievance concerned the October 21, 2005 Letter of warning. Both were resolved at step 2 of the USPS's grievance process.[2] Zito and USPS entered into a settlement agreement on July 21, 2006 regarding the first grievance. That agreement acknowledges that the USPS request for Zito to undergo a FFDE was improper because he was certified fit for duty when he was hired in 1991, and USPS alleged no facts questioning Zito's fitness for duty.

On July 13, 2006 Zito and the USPS entered into a settlement agreement regarding the second grievance. That agreement directed the rescission of the Letter of Warning from all records and files based on unspecified mitigating circumstances. On July 21, 2006, the parties reached another settlement agreement that confirmed the rescission of any disciplinary action against Zito. This agreement further stated that Zito adhered to proper procedure under the circumstances by refusing to sign assignment sheets that he

---

**2.** Step 1 involves a formal meeting between the grievant, the Branch President and the Postmaster. Step 2 involves a dispute resolution team.

could not complete was the proper procedure for the circumstances.

On October 15, 2005 Zito was reassigned to Tour 1. He remained on Tour 1, under the supervision of WaiT. Chung ("Chung") until April 2007.

On November 7, 2005, Zito filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Zito's alleged that he was discriminated against when:

1) On August 10, 2005, Maintenance Manager Vias requested that [he] provide medical documentation for [his] disability;

2) On August 10, 2005, Supervisor Ramrup refused to provide [him] with reasonable accommodation;

3) On October 15, 2005, [he was] reassigned to Tour One; and

4) [On] October 21, 2005, [he was] issued a Letter of Warning.

(Ramirez–Fisher Decl. Ex. 25 (Gov, 441)).

The EEOC considered only claims 2–4 of the charge. The administrative judge issued a decision finding that Zito was not the victim of illegal discrimination. The EEOC entered Final Action on that decision on September 22, 2006. Zito appealed that decision, and the agency's Final Action was affirmed on April 16, 2009. Zito's request for reconsideration of that decision was denied on November 5, 2009.

On April 21, 2007, Zito handed his identification card to Chung and said "I quit." Zito's supervisors were surprised at his sudden resignation and expected him to return to work once he had "cooled off." Rutigliano Decl. ¶ 6. USPS procedure dictates that a verbal resignation is not sufficient to separate an employee from service; only written resignations are effective. Miles Decl. ¶ 23. Pursuant to this procedure, Zito was marked absent from April 22, 2007, for-

ward. Until Zito filed formal resignation papers, he could have returned to work any time. Chung Decl. ¶ 22.

On April 30, 2007, the USPS sent Zito a letter warning him that he had been marked Continuously Absent Without Leave ("CAWOL") and that failure to explain his absence would result in his removal from employment. Prior to taking any further action, USPS sent Zito formal resignation papers. Zito's union representative at the time, Giacomo Rutigliano ("Rutigliano") urged him to sign and return those papers in order to protect his pension, which he would lose if he was fired. Zito refused to sign the papers. On July 19, 2007, the USPS issued a Notice of Removal to Zito.

On February 18, 2008, Zito sent a letter to the USPS explaining that he had resigned as of April 21, 2007. In this letter, he requested that his employment records be adjusted to reflect his resignation and for his entitlements and benefits to be reinstated. Pursuant to a pre-arbitration settlement agreement, the Notice of Removal was rescinded on May 13, 2008.

Zito filed the complaint in the instant suit on January 22, 2010, alleging that the USPS illegally discriminated against him by (1) denying him a reasonable accommodation on August 10, 2005, (2) conducting a PDI on October 4, 2005, and (3) sending him a Letter of Warning on October 21, 2005. Zito further alleges that the actions by the USPS were taken in retaliation against him for filing grievances and a complaint with EEOC. Zito further claims that the USPS retaliated by marking him CAWOL on April 30, 2007 and removing him from employment on July 19, 2007 instead of accepting his resignation.

Additionally, Zito alleges that he suffered harm because the text "Employee reactivated to change separation type

NOA 346 (removal) to separation type NOA 317 (voluntary resignation)" appeared in his employment records for a period of time after he had resigned. He alleges that this prevented him from securing further employment with federal agencies.

Zito also alleges that he was denied compensation for time spent in preparation for EEO grievances and EEOC case preparation.

## STANDARD OF REVIEW

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In response to a properly supported motion, an opposing party may not rely merely on the pleadings or denials, but must submit evidence of "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

### B. LEGAL STANDARD FOR DISABILITY DISCRIMINATION

The Rehabilitation Act prohibits discrimination based on disability. See 29 U.S.C. § 794(a). The standards used to determine whether an employer has violated the Rehabilitation Act are identical to those applied under the Americans with Disabilities Act ("ADA"). See 29 U.S.C. § 791(g).

### 1. REASONABLE ACCOMMODATION CLAIM

An employer violates the Rehabilitation Act by, among other things, failing to make a "reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee[.]" 45 C.F.R. § 84.12(a).

■ A prima facie case for a failure to accommodate claim "requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 183–84 (2d Cir. 2006) (quoting Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir.2004)).

■ An employee's request for accommodation of a disability "triggers a duty on the part of the employer to investigate that request and determine its feasibility." Graves, 457 F.3d at 185 (citations omitted). The ADA envisions that this duty will be discharged by an " 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 566 (2d Cir.2000), cert. denied, 531 U.S. 931, 121 S.Ct. 314, 148 L.Ed.2d 251 (2000); see also 29 C.F.R. § 1630.2 ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.").

■ An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate. Nugent v. St. Lukes–Roosevelt Hosp. Ctr., 303 Fed.Appx. 943, 946 (2d Cir.2008). In evaluating a claim for failure to accommodate, therefore, "courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility."

*Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1135–36 (7th Cir.1996) ("[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.").

## 2. *DISCRIMINATION CLAIM*

 A claim of disability discrimination under the Rehabilitation Act is governed by the three-step burden-shifting analysis set out for claims under the ADA in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must first establish a prima facie case of unlawful discrimination. "To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." *Collins v. N.Y.C. Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002) (citations omitted).

 Once the plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, shifting the burden to the defendant to provide a nondiscriminatory reason for the employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The employer may rebut that presumption by providing a nondiscriminatory reason for its actions, which shifts the burden back to the plaintiff to show by a preponderance of the evidence that the employer's decision was motivated, at least in part, by a discriminatory reason. *See Fields v. N.Y. State Off. of Mental Retard. & Dev. Disab.,* 115 F.3d 116, 120–21 (2d Cir.1997).

### (a) Adverse Employment Action

 In order to support a prima facie case for discrimination, an adverse em-

ployment action must be "materially adverse." *Galabya v. N.Y.C. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). This inquiry is fact-specific, *see Fridia v. Henderson,* 99–CV–10749, 2000 WL 1772779, at *6 (S.D.N.Y. Nov. 30, 2000) (listing factors), but to be "materially adverse," an action must be "more disruptive than mere inconvenience or an alteration of job responsibilities." *Id.*

### (b) Discrimination

 In order to establish an inference of discrimination occurred, a plaintiff must offer "evidence which can reasonably and logically give rise to an inference of discrimination under all of the circumstances." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 448 (2d Cir.1999). This "may be proven by showing that a similarly situated individual ... was treated differently." *Tramble v. Columbia Univ.,* 97 Civ. 1271, 1999 WL 61826, at *5 (S.D.N.Y. Feb. 10, 1999); *see also Hargett v. Nat'l Westminster Bank,* 78 F.3d 836, 839 (2d Cir.1996).

 An individual "similarly situated" to a plaintiff in a disparate treatment case must be similar in "all material respects." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.1997). Such similarity "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *See Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 96 (2d Cir.1999).

## DISCUSSION

### A. *REASONABLE ACCOMMODATION CLAIM*

 The Court finds that Zito was responsible for the breakdown in the interac-

tive process; therefore the Court need not determine whether the USPS actually denied Zito reasonable accommodations. The USPS points to Zito's refusal to provide documentation in support of his request for accommodation as evidence that he was responsible for the breakdown of the interactive process, thereby releasing USPS from any further obligation to consider possible accommodations.

As a part of the interactive process, the USPS was entitled to request that Zito provide documentation of his disability and the appropriate accommodations for that disability. See Lovejoy–Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 219 (2d Cir.2001) (noting that interactive process might include, among other things, requesting information about the condition and what limitations the employee has). Despite numerous requests from S. Chow and from Ramrup, Zito simply refused to provide documentation in support of his request for accommodation, even though he was given ample time to acquire that documentation. Zito claims that the request for documentation was not specific, but S. Chow's report from the FFDE speaks for itself. S. Chow gave Zito a specific follow-up date and requested information regarding his etiology, the current status of his heart condition, information about prescribed medication, treatment plans, and any specific limitations or restrictions on his work. Zito's failure to respond to USPS's requests clearly constitutes bad faith participation, if it can be called participation at all, in the interactive process for determining the appropriate accommodations. See Beck, 75 F.3d at 1135.

Nor can Zito's assertion that the USPS should have relied on I. Chow's 1990 pre-employment examination and his 2000 FMLA documentation rescue his claim. The USPS was entitled to request up-to-

date documentation of Zito's disability and the appropriate accommodations. See Gard v. U.S. Dep't of Educ., 11–5020, 2011 WL 2148585 (D.C.Cir. May 25, 2011) ("[A]ppellant's failure to provide updated medical information when reasonably requested is fatal to his failure to accommodate claim."). At no point did Zito submit documentation or information that would have enabled USPS to assess the appropriate accommodations. Thus, the USPS cannot be held liable for denying Zito a reasonable accommodation.

The fact that Zito's refusal to respond originated with USPS's request that he undergo a FFDE does not compel a different result. Though the USPS acknowledged, in the July 21, 2006 settlement agreement, that the request that Zito undergo an FFDE was in violation of USPS policy, the evidence shows and Zito fails to dispute that the FFDE request was initiated as an attempt to gather the information necessary for determining the appropriate accommodation for his disability. The USPS's conduct includes no sign of failure on the part of the USPS to participate in good faith. See Beck, 75 F.3d at 1135. Given the totality of the circumstances, the USPS's initiation of an interactive process, albeit by an improper procedure, could not, as a matter of law, constitute a breakdown of the interactive process. Accordingly, Zito's claim for denial of reasonable accommodation is dismissed.

### B. DISCRIMINATION CLAIMS

Zito identifies five allegedly adverse actions: (1) being denied a reasonable accommodation, (2) being sent for a FFDE, (3) being subject to a Preliminary Disciplinary Interview, (4) receiving a letter of warning, and (5) being marked CAWOL and removed from employment.

The Court need not address whether Zito has satisfied the first two elements of a prima facie case for any of these claims of disparate treatment. Assuming, without deciding, that Zito was a member of a protected class at the time of the alleged discriminatory acts and that he was otherwise qualified for his position, Zito still has not established a prima facie case for any of his claims.

Zito's claim for discrimination in the procedure leading to his denial of accommodations for his disability fails because Zito has not presented circumstances that give rise to an inference of discrimination. Zito's claim that the FFDE, the Preliminary Disciplinary Interview, and the Letter of Warning constituted discrimination fail because none of these actions are "materially adverse." Finally, Zito's discrimination claims relating to Zito's CAWOL designation and his ultimate removal from employment fail because Zito has not exhausted all available administrative remedies. The Court addresses each cause for dismissal in turn.

### 1. DENIAL OF A REASONABLE ACCOMMODATION

■ Zito claims that he was subject to discrimination as a result of the procedure that ultimately led to the USPS's denial of accommodations for his disability. Under all of the circumstances, and drawing all reasonable inferences in Zito's favor, Zito has not established circumstances that give rise to an inference that he was subject to illegal discrimination when he was denied a reasonable accommodation. Zito comes closest to demonstrating such circumstances by naming two employees, "Bob Drager" and "Mr. ('Smitty') Smith" who were granted accommodations at Church Street in 1993 and Grand Central in 1999, respectively. Pl. Aff. ¶ 11. Zito does not, however, provide any informa-

tion as to whether either individual was granted accommodation without providing updated medical documentation. Because the evidence Zito presents does not permit comparison of their conduct with his, no inference of discrimination can be drawn from the different results of that conduct. Accordingly, Zito has not presented evidence relating to the events ultimately resulting in his denial of reasonable accommodation that would give rise to an inference of discrimination.

### 2. THE FITNESS FOR DUTY EXAMINATION, THE PRELIMINARY DISCIPLINARY INTERVIEW, AND THE LETTER OF WARNING

■ Zito alleges that the USPS illegally discriminated against him by (1) asking to submit to a FFDE, (2) subjecting him to a PDI, and (3) giving a Letter of Warning. None of these actions constitute "materially adverse" changes in Zito's employment status, and therefore cannot give rise to a discrimination claim. *See Farina v. Branford Bd. of Educ,* 3:09–CV–49, 2010 WL 3829160 at *19 (D.Conn. Sept. 23, 2010) *aff'd,* 458 Fed.Appx. 13 (2d Cir.2011) ("[Plaintiff] has cited no cases, and the court can find none, indicating that being forced to submit to a fitness for duty evaluation might constitute an adverse employment action."); *Russell v. Potter,* 10–CV–1130, 2012 WL 760562 at *3 (E.D.N.Y. Mar. 7, 2012) ("[A] pre-disciplinary interview itself is not an adverse employment action[.]"); *Blake v. Potter,* 03 CIV. 7733, 2007 WL 2815637 at *6 (S.D.N.Y. Sept. 25, 2007) *aff'd,* 330 Fed.Appx. 232 (2d Cir. 2009) ("[C]ourts in this District and elsewhere have held that a single letter of warning from an employer, without any subsequent adverse consequence, is not an "adverse employment action."). Accordingly, Zito's claims for discrimination relating to the FFDE, the Preliminary Dis-

ciplinary Interview, and the Letter of Warning must be dismissed.

### 3. THE CAWOL DESIGNATION AND REMOVAL

██ Zito also alleges discrimination claims relating to his resignation, the USPS decision to designate him as CA-WOL, and the ultimate decision to remove him from employment. However, Zito has never raised these claims previously. Thus, Zito has failed to timely exhaust required administrative remedies by not initiating contact with an EEOC counselor within the period of 45 days prescribed under the applicable USPS regulations. *See* 29 C.F.R, § 1614.105(a)(1); 29 C.F.R. § 1614.103; *see also Bruce v. U.S. Dep't of Justice,* 314 F.3d 71, 74 (2d Cir.2002); *Briones v. Runyon,* 101 F.3d 287, 289 (2d Cir.1996). Zito has offered no evidence, and indeed there is no indication in Zito's complaint, the record, or the EEOC affirmation of its Final Action on his EEOC complaint that Zito complied with these procedures. Accordingly, Zito's discrimination claims relating to his resignation, his "CAWOL" designation, and his ultimate removal from employment must be dismissed.

### C. *RETALIATION CLAIMS*

Zito also raises retaliation claims against the USPS. However, none of Zito's submissions indicate that he previously raised these issues by contacting an EEOC counselor within the period of 45 days prescribed under the applicable Postal Service regulations regarding any retaliation claims. *See* 29 C.F.R. § 1614.105(a)(1); 29 C.F.R. § 1614.103; *see also Bruce,* 314 F.3d at 74; *Briones,* 101 F.3d at 289. Because he failed to exhaust the administrative remedies available to him, Zito's retaliation claims must be dismissed.

### D. *ZITO'S NON–FEDERAL CLAIMS*

All of Zito's federal law claims have been dismissed. However, the Court has discretion to exercise supplemental jurisdiction over remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The court declines to do so. Accordingly, Zito's remaining state law claims are dismissed.

### *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 40) of defendant Patrick R. Donahoe, Postmaster General, United States Postal Service, for summary judgment dismissing the complaint of plaintiff Frank Zito herein is **GRANTED.**

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**