In the Matter of JERALD L. VINIKOFF, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. [920 NYS2d 458]—

Peters, J. Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respon-

dent State Division of Human Rights which dismissed petitioner's claim alleging discrimination based on disability.

Petitioner began working as an at-will attorney for respondent State Legislative Bill Drafting Commission (hereinafter LBDC) in 1984. He was placed on temporary administrative leave in January 2006 after writing three letters to his supervisor expressing, in what was perceived as an aggressive and threatening tone, his discomfort with various aspects of his job and resentment towards upper management. Later that month, petitioner's treating psychologist, Kevin George, sent a letter to LBDC stating that petitioner was, "for medical reasons, unable to return to his employment for an indefinite period of time," and that he would advise LBDC if petitioner's "condition" changed. George did not provide LBDC with a medical diagnosis or any other information about petitioner's medical condition.

By letter dated May 5, 2006, George informed LBDC that petitioner suffers from Asperger's disorder, diabetes and "other medical problems" and requested that petitioner be granted accommodations that would allow him to perform his duties more efficiently and effectively. Such requested accommodations included, among others, assignment of a secretary or receptionist to screen petitioner's calls and walk-ins, installation of a door and ceiling on his work cubicle and screens on his windows, modifications to his computer, improved maintenance of certain doorknobs and the men's bathroom, clearer direction in work assignments and limitation of his work hours to 9:00 A.M. to 5:00 P.M. George stated in the letter that petitioner was "ready to return to work immediately granted that these accommodations are put in place." Approximately a week later, LBDC received a letter from Lewis Oliver indicating that he had been retained as counsel by petitioner, referencing George's requested accommodations and requesting that petitioner be returned to work as soon as possible.

On May 18, 2006, LBDC's Administrative Counsel, Rosemarie Perez Jaquith, replied by separate letters to George and Oliver. In the letter to George, Jaquith requested that he provide additional medical information about the effects of Asperger's disorder, as well as petitioner's other unspecified medical conditions, and indicate how each of the accommodations requested in his previous letter related to each of petitioner's medical conditions. Jaquith advised both George and Oliver that LBDC could better assess the proposed accommodations once it received further medical information about petitioner's condition. While waiting for the explanatory medical information from George, LBDC investigated the feasibility of several of the

requested accommodations. It found that several of the accommodations were feasible, while others—such as hiring a private secretary for petitioner, installing a ceiling on his cubicle and limiting his work hours when the Legislature was in session—were not.

Meanwhile, LBDC continued to send petitioner monthly time sheets reflecting his leave usage and balance, which he signed and returned. On July 10, 2006, Jaquith reminded petitioner and Oliver of the date by which petitioner needed to apply for long-term disability if he intended to do so and informed them that petitioner would exhaust his sick, vacation and personal leave accruals on August 1, 2006. Two weeks later, in response to a letter by petitioner inquiring as to his employment status after his leave accruals expired and the possibility of maintaining his life insurance, LBDC again reminded him that his leave accruals would be exhausted on August 1, 2006 and that he would be removed from the payroll on that date. Petitioner was removed from LBDC's payroll on August 2, 2006.

Ten days later, on August 12, 2006, Jaquith received a letter from Oliver stating that petitioner was ready to return to work and attributing his delay in responding to her May 2006 letter to "vacation schedules and litigation obligations." Oliver also enclosed a letter from George dated August 1, 2006, in which George provided information about petitioner's Asperger's disorder, explained how some, but not all, of the 17 accommodations he had previously requested were related to that condition, and stated that petitioner was "ready to return to work with accommodations." Shortly thereafter, Jaquith responded to Oliver notifying him that petitioner's employment had ended.

Petitioner thereafter filed a complaint with respondent State Division of Human Rights (hereinafter SDHR) alleging that LBDC unlawfully discriminated against him based on disability. Following a hearing, an Administrative Law Judge issued recommended findings of fact and an opinion finding that petitioner failed to prove that LBDC refused to accommodate his disability. SDHR adopted the Administrative Law Judge's determination and dismissed the complaint. Petitioner then commenced this proceeding, which was subsequently transferred to this Court, seeking to annul SDHR's determination.

"SDHR's determinations are entitled to considerable deference due to its expertise in evaluating discrimination claims" (*Matter of Harrison v Chestnut Donuts, Inc.*, 60 AD3d 1130, 1131 [2009] [internal quotation marks and citations omitted]; *see Matter of New York State Off. of Mental Health v New York State Div. of Human Rights*, 75 AD3d 1023, 1024 [2010]; *Matter*

*of Bracci v New York State Div. of Human Rights*, 62 AD3d 1146, 1148-1149 [2009], *appeal dismissed and lv dismissed* 15 NY3d 865 [2010]), and the narrow scope of this Court's review is limited to whether its findings are supported by substantial evidence in the record (*see Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]; *Matter of Tosha Rests., LLC v New York State Div. of Human Rights*, 79 AD3d 1337, 1339 [2010]). "A determination may not be set aside 'merely because the opposite decision would have been reasonable and also sustainable' " (*Matter of Matteo v New York State Div. of Human Rights*, 306 AD2d 484, 485 [2003], quoting *Matter of Mize v State Div. of Human Rights*, 33 NY2d 53, 56 [1973]; *accord Matter of New York State Off. of Mental Health v New York State Div. of Human Rights*, 53 AD3d 887, 889 [2008], *lv denied* 11 NY3d 713 [2008]).

The Human Rights Law requires an employer to provide a reasonable accommodation for an employee's known disability (*see* Executive Law § 296 [3] [a]; *Matter of Tosha Rests., LLC v New York State Div. of Human Rights*, 79 AD3d at 1338).[1] Regulations promulgated pursuant to the Human Rights Law impose various rights and obligations on the employer and employee. As relevant here, "[t]he employer has a duty to move forward to consider accommodation once the need for accommodation is known or requested [and] has the right to medical or other information . . . that is necessary for consideration of the accommodation" (9 NYCRR 466.11 [j] [4], [5]). The employee, in turn, "must cooperate with the employer in the consideration and implementation of the requested reasonable accommodation [and] in providing medical or other information that is necessary to verify the existence of the disability or that is necessary for consideration of the accommodation" (9 NYCRR 466.11 [k] [3], [4]).

Furthermore, the Human Rights Law and the Americans with Disabilities Act (*see* 42 USC § 12101 *et seq.* [hereinafter ADA]) employ analogous language regarding accommodations and, thus, federal precedent interpreting and applying the ADA are relevant to our analysis (*see Gill v Maul*, 61 AD3d 1159, 1160 [2009]; *Hayes v Estee Lauder Cos., Inc.*, 34 AD3d 735, 737 [2006]). Under the ADA, when an employer is aware of the need for accommodation, both the employer and the employee are required to engage in an "informal, interactive process" to identify the employee's needs and determine the appropriateness and feasibility of the requested accommodations (29 CFR

---

1. There is no dispute by the parties that petitioner suffers from a disability by reason of his Asperger's disorder.

1630.2 [o] [3]; *see Jakubowski v Christ Hosp., Inc.*, 627 F3d 195, 202-203 [6th Cir 2010]; *Jackan v New York State Dept. of Labor*, 205 F3d 562, 566 [2d Cir 2000], *cert denied* 531 US 931 [2000]; *Beck v University of Wisconsin Bd. of Regents*, 75 F3d 1130, 1135 [7th Cir 1996]; *see also Phillips v City of New York*, 66 AD3d 170, 175-176 [2009]; *Hayes v Estee Lauder Cos., Inc.*, 34 AD3d at 737). "[B]oth the employer and the employee have a duty to act in good faith once the interactive process begins" (*Conneen v MBNA Am. Bank, N.A.*, 334 F3d 318, 333 [3d Cir 2003]; *see Kleiber v Honda of Am. Mfg., Inc.*, 485 F3d 862, 871 [6th Cir 2007]), and "[a]n employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate" (*Nugent v St. Lukes-Roosevelt Hosp. Ctr.*, 303 Fed Appx 943, 946 [2d Cir 2008]; *see Beck v University of Wisconsin Bd. of Regents*, 75 F3d at 1135).

Here, there is no dispute that George's May 2006 letter was the first request for accommodations that the LBDC received from petitioner. Although the letter indicated that petitioner suffered from Asperger's disorder and diabetes and set forth a "package" of 17 proposed accommodations that were necessary for petitioner's return to work, it did not identify any of petitioner's "other medical problems" or the nexus between each of the requested accommodations and petitioner's various conditions. Accordingly, Jaquith acted reasonably and promptly in requesting additional medical information about the effects of Asperger's disorder as well as petitioner's other unspecified medical conditions, and an explanation as to how each of the proposed accommodations related to and would address each of petitioner's medical conditions (*see* 9 NYCRR 466.11 [j] [5]). Furthermore, while awaiting George's response, LBDC fulfilled its obligation to investigate the feasibility of several of the proposed accommodations (*see* 9 NYCRR 466.11 [j] [4]; *Phillips v City of New York*, 66 AD3d at 176; *compare Parker v Columbia Pictures Indus.*, 204 F3d 326, 338 [2d Cir 2000]; *Taylor v Phoenixville School Dist.*, 184 F3d 296, 318-319 [3d Cir 1999]).

Significantly, however, George did not respond to Jaquith's letter for more than 10 weeks, by which point petitioner had already exhausted all of his leave time and was no longer an employee of LBDC. Neither George nor petitioner could explain this delay. "An employer cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes" (*Templeton v Neodata Servs., Inc.*, 162 F3d 617, 619 [10th Cir 1998]; *see Beck v University of Wisconsin Bd. of Regents*, 75 F3d at 1137). Furthermore, although LBDC kept petitioner and Oliver

informed of petitioner's leave time and reminded them that it would be exhausted on August 1, 2006, at no time following Jaquith's request for additional information did either of them ever contact LBDC and inquire about the status of petitioner's request for accommodations, seek additional time to respond to LBDC's inquiry or ask that petitioner be retained as an employee after exhaustion of his leave time.[2] Indeed, petitioner's only correspondence with LBDC during his administrative leave was for the purpose of requesting information about disability insurance and his right to continue in group insurance following exhaustion of his leave time, which suggested that he was not planning on returning to work. Under the circumstances of this case, we find substantial evidence supporting SDHR's determination that LBDC made reasonable efforts to both communicate with petitioner and consider accommodations based on the information it possessed and that, by failing to respond to its request for additional information, petitioner caused the breakdown in the interactive process (*see Jackson v City of Chicago*, 414 F3d 806, 813-814 [7th Cir 2005]; *Templeton v Neodata Servs. Inc.*, 162 F3d at 619; *Stewart v Happy Herman's Cheshire Bridge, Inc.*, 117 F3d 1278, 1287 [11th Cir 1997]; *Beck v University of Wisconsin Bd. of Regents*, 75 F3d at 1137). As such, he cannot claim that LBDC failed to provide him with a reasonable accommodation.

Mercure, J.P., Malone Jr., Kavanagh and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

 ---

**2.** Although petitioner faults LBDC for not contacting him directly or meeting with him to obtain the additional information it requested, petitioner chose to conduct the interactive process through his attorney and George.