Briffa v New York State Dept. of Health

2026 NY Slip Op 02180

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Gerald E. Briffa, Appellant,

v

New York State Department of Health, Respondent.

Decided and Entered:April 9, 2026

CV-24-1673

Calendar Date: February 9, 2026

Before: Clark, J.P., Reynolds Fitzgerald, Ceresia, Powers And Corcoran, JJ.

Gerald E. Briffa, Eagle Bridge, appellant pro se.

Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for respondent.

[*1]

Reynolds Fitzgerald, J.

Appeal from an order of the Supreme Court (Denise Hartman, J.), entered September 4, 2024 in Albany County, which, among other things, granted defendant's cross-motion for summary judgment dismissing the complaint.

In March 2017, plaintiff, who has chronic fatigue syndrome and other ailments, was employed through the Governor's program designed to hire individuals with disabilities (see Civil Service Law §§ 55-b; 55-c). Plaintiff began his employment as a full-time senior attorney at the Bureau of Health Facility Planning and Development in the division of Legal Affairs — a unit of defendant. Plaintiff's primary assignment was reviewing nursing home and assisted living applications (hereinafter ALP), to reduce the 12-year backlog of said applications. Shortly after he was hired, plaintiff made a request for reasonable accommodations including the following: a private office equipped with a sofa, window and a suitable chair; that said office undergo an ergonomic analysis; that he be afforded the ability to work from home as much as possible, but no less than three days per week; and that he be afforded extra break periods beyond the allotted two 15-minute breaks for every day plaintiff worked on site. On April 21, 2017, defendant granted plaintiff's request to the extent that he was provided a private office and advised to file an application for telecommuting. Plaintiff subsequently filed two such applications and ultimately received two days of telecommuting per week. In July 2017, plaintiff requested a third day of telecommuting per week. By letter dated August 17, 2017, defendant denied plaintiff's request for the third day. By reason of explanation for the refusal, defendant cited that a third day of working from home would cause an undue hardship and disruption in operations as it would limit plaintiff's ability to review the ALP applications, an essential function of his job assignment. On August 20, 2017, plaintiff submitted his resignation.

Plaintiff thereafter commenced this action alleging that defendant engaged in an unlawful discriminatory practice by refusing to provide him three days per week of telecommuting as a reasonable accommodation for his disabilities (see Executive Law § 296 [3] [a]). Following joinder of issue and discovery, plaintiff moved for summary judgment on liability only; defendant opposed plaintiff's motion and cross-moved for summary judgment dismissing the complaint. Supreme Court denied plaintiff's motion, granted defendant's cross-motion and dismissed the complaint in its entirety. Plaintiff appeals, and we affirm.

"The Human Rights Law requires an employer to provide a reasonable accommodation for an employee's known disability" (Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d 1159, 1162 [3d Dept 2011] [citations omitted]; see Pimentel v Citibank, N.A., 29 AD3d 141, 145 [1st Dept 2006], lv denied 7 NY3d 707 [2006]). "A reasonable accommodation is one which permits an employee with a disability [*2]to perform in a reasonable manner the activities involved in the job and does not impose an undue hardship on the employer's business" (Graham v New York State Off. of Mental Health, 154 AD3d 1214, 1217 [3d Dept 2017] [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of New Venture Gear, Inc. v New York State Div. of Human Rights, 41 AD3d 1265, 1266 [4th Dept 2007]). "To establish a prima facie case of discrimination based upon the denial of a reasonable accommodation, the plaintiff must prove that he or she is a person with a disability, that the employer had notice of the disability, that he or she could perform the essential functions of the job with a reasonable accommodation and that the employer refused that reasonable accommodation" (Graham v New York State Off. of Mental Health, 154 AD3d at 1217-1218 [citations omitted]; see Nordenstam v State Univ. of N.Y. Coll. of Envtl. Science & Forestry, 184 AD3d 1157, 1158 [4th Dept 2020]).

The record establishes that plaintiff has a disability and that defendant had notice of said disability. As such, the issue distills to whether plaintiff could perform the essential functions of his job with a reasonable accommodation and whether defendant refused that reasonable accommodation. The essential functions of a job consist of "the fundamental duties to be performed in the position in question, but not functions that are merely marginal. . . . [U]ltimately, the question whether a task constitutes an essential function depends on the totality of the circumstances" (Rodal v Anesthesia Group of Onondaga, P.C., 369 F3d 113, 120 [2d Cir 2004] [internal quotation marks and citations omitted]). "Whether a job function is essential depends on multiple factors, including the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring the plaintiff to perform the function, mention of the function in any collective bargaining agreement, the work experience of past employees in the job, and the work experience of current employees in similar jobs" (Gill v Maul, 61 AD3d 1159, 1160-1161 [3d Dept 2009] [internal quotation marks and citation omitted]). Based on plaintiff's deposition, the depositions of plaintiff's supervisor and the supervisor's affirmations, it is undisputed that this was a full-time position, that at the time plaintiff was hired he had no experience in health care law and required training and that he was primarily hired to assist in the reduction of a 12-year backlog of ALP applications. Additionally, the ALP applications in question were paper documents containing confidential information and were not allowed to be removed from the office, telecommuting was rare and plaintiff's request to telecommute at least three days per week was to be implemented over time.

With respect to plaintiff's motion, he was unable to meet his initial burden to show that he could perform the essential functions [*3]of his job with the reasonable accommodation he requested. Plaintiff's deposition testimony consists of him stating that since his diagnosis in the early 2000s he had never held a full-time position, and in fact had not worked any jobs for "more than a few hours a week . . . [s]o [that he] was able to rest," and that "[i]deally, [he] needed five telecommuting days" to "rest periodically," "nap during the day" and "do . . . meditation" in order to keep his mind "sharp." These statements make it clear that plaintiff was unable to perform the essential function of his job with the proposed accommodation. As to reviewing the ALP applications, plaintiff acknowledged that he could not take the paper applications home and was required to review them at the office. Accordingly, Supreme Court properly denied plaintiff's motion (see Graham v New York State Off. of Mental Health, 154 AD3d at 1220; Gill v Maul, 61 AD3d at 1161).

Turning to defendant's cross-motion, when plaintiff was telecommuting, he was generally assigned to review certificate of need applications. Unlike ALP applications, these were accessible electronically, thus plaintiff could work on them from home. With respect to his performance, his supervisor averred that in comparison to the other attorneys in the office, plaintiff was slow in completing reviews of these applications while telecommuting and was improperly reviewing the ALP applications when he was working on site. Considering these factors, and assessing plaintiff's request for reasonable accommodation, defendant determined that because plaintiff was unable to review the ALP petitions while telecommuting — which was his major assigned task — and that he was in need of more training and proper supervision, it would cause an undue hardship to implement a third day of telecommuting.FN1 Thus, Supreme Court properly granted defendant's cross-motion that sought dismissal of plaintiff's reasonable accommodation claim (see Graham v New York State Off. of Mental Health, 154 AD3d at 1220; Gill v Maul, 61 AD3d at 1161).

Plaintiff next asserts that Supreme Court erred in determining that defendant engaged in an interactive process. "An employer normally cannot obtain summary judgment on a denial of a reasonable accommodation claim unless the record demonstrates that there is no triable issue of fact as to whether the employer duly considered the requested accommodation by engaging in a good faith interactive process that assessed the needs of the disabled individual and the reasonableness of the accommodation requested" (Graham v New York State Off. of Mental Health, 154 AD3d at 1218 [internal quotation marks, brackets and citations omitted]; see Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d at 1162-1163). "Both the employer and the employee have a duty to act in good faith once the interactive process begins, and an employee who is responsible for the breakdown of that interactive process may not recover for a failure to [*4]accommodate" (Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d at 1163 [internal quotation marks, brackets and citations omitted]).

Considering the interactive process that took place herein, the record demonstrates that after plaintiff made his original request for reasonable accommodations, defendant requested medical documentation to assess plaintiff's request. Shortly thereafter, defendant partially granted plaintiff's request by providing a private office, a daylight desk lamp and an ergonomic chair. Defendant additionally advised plaintiff that he could submit a written request to telecommute and provided the telecommute policy and telecommute request form to plaintiff. Thereafter, plaintiff twice requested a day of telecommuting and defendant granted both days.FN2 As to plaintiff's request for a third day of telecommuting, plaintiff argues that while his application was pending, he learned of defendant's imminent revision of its department-wide telecommuting policy, which was to include provisions that telecommuting privileges would not be extended to probationary employees and that all employees currently enjoying telecommuting privileges would have to reapply. When plaintiff asked defendant how he could be assured that he would receive his telecommuting accommodation, he was advised he had to reapply. Instead, plaintiff resigned a week prior to the implementation of the revised policy and failed to take any steps to file an application under this new policy. As such, it was plaintiff who caused the breakdown in the interactive process (see Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d at 1163). The record evinces that defendant fulfilled its obligation to investigate the feasibility of plaintiff's request for reasonable accommodations and gave due consideration to the requests (see id.; Pimentel v Citibank, N.A., 29 AD3d at 149).

Supreme Court also properly dismissed plaintiff's claim that he was constructively discharged. "An employee is constructively discharged when her or his employer, rather than discharging the plaintiff directly, deliberately created working conditions so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign" (Golston-Green v City of New York, 184 AD3d 24, 44 [2d Dept 2020] [footnote and citation omitted]; see White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d 1230, 1232 [3d Dept 2023]). Viewing the evidence in a light most favorable to plaintiff, his complaints do not demonstrate an intolerable work environment compelling him to resign. Plaintiff states in his deposition that he "had a great job" and "nice people to work with." His chief complaint is that defendant was in the process of changing its department-wide telecommuting policy so as to prohibit probationary employees from receiving any telecommuting privileges and that he had been informed that nothing could be done to change that policy decision[*5]. However, fatal to his argument is that he had, in fact, been advised to reapply for this accommodation, but instead resigned prior to the effective date of the new policy and admittedly never reapplied. Furthermore, there is no evidence that defendant "intentionally created an intolerable work atmosphere that forced [plaintiff] to quit involuntarily" as the change in policy was not directed at him, but instead it impacted the entire department and was revised due to employees abusing the previous telecommuting policy (Whidbee v Garzarelli Food Specialties, Inc., 223 F3d 62, 74 [2d Cir 2000] [internal quotation marks, brackets and citation omitted; emphasis added]). Thus, plaintiff failed to raise a triable issue of fact that would prevent the granting of summary judgment dismissing a cause of action predicated on a constructive discharge theory (see Golston-Green v City of New York, 184 AD3d at 44-45; Whidbee v Garzarelli Food Specialties, Inc., 223 F3d at 74).

Clark, J.P., Ceresia, Powers and Corcoran, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Although plaintiff argues in his appellate brief that he was denied extra break periods, that defendant failed to offer alternative work assignments, he contests the admissibility of his reasonable accommodation documents and that the review of the ALP applications was not an essential function of his job, plaintiff's complaint only asserts a claim for disability discrimination due to the denial of three days of telecommuting. Accordingly, all other claims asserted in his brief are being raised for the first time and are unpreserved (see Graham v New York State Off. of Mental Health, 154 AD3d at 1216, n 1; Matter of Tomarken v State of New York, 100 AD3d 1072, 1076 [3d Dept 2012]).

Footnote 2: During this period, defendant also granted plaintiff's request to park on site at the facility and additionally provided him with an anti-fatigue mat at his request.