Copeland Holdings, LLC v Gravity Ciders, Inc.

2026 NY Slip Op 02704

April 30, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Copeland Holdings, LLC, Respondent,

v

Gravity Ciders, Inc., Appellant.

Decided and Entered:April 30, 2026

CV-25-0606

Calendar Date: February 10, 2026

Before: Clark, J.P., Aarons, Pritzker, Mcshan And Corcoran, JJ.

Coughlin & Gerhart LLP, Binghamton (Robert R. Jones of counsel), for appellant.

Steates, Remmell, Steates & Dziekan, Utica (Kevin G. Martin, Utica, of counsel), for respondent.

[*1]

Aarons, J.

Appeal from an order of the Supreme Court (Joseph McBride, J.), entered March 6, 2025 in Chenango County, which denied defendant's motions for, among other things, summary judgment on its second, third and fourth counterclaims.

Defendant holds a farm cidery license issued by the State Liquor Authority (hereinafter SLA) and owns a cidery that manufactures and distributes hard cider as well as operates a tap room. The sole owners of defendant are Casey Vitti and Patricia Wilcox. Plaintiff is a company consisting of two members: Ian Rood and Bryan Birdsall. Rood, individually, also owns an interest in Sundown Golf & Country Club II, LLC (hereinafter Sundown); Sundown, in turn, holds a retail license to serve alcohol. By way of a management agreement effective September 2020, defendant temporarily appointed plaintiff as its exclusive management agent for the cidery. In exchange, plaintiff would be paid according to scheduled management fees and — as relevant here — additional compensation consisting of shares in defendant. Specifically, part 7 (c) of the agreement provides that, "[on] September 1, 2022 [plaintiff] shall be entitled to and shall receive, as additional compensation, a 5% ownership interest in [defendant], and another 5% ownership interest at the conclusion of the term on August 31, 2023." The agreement terminated as scheduled in August 2023, upon the parties' mutual consent, and defendant paid plaintiff the management fees but did not transfer the ownership interest promised in part 7 (c). Defendant also demanded that plaintiff return defendant's corporate book, which allegedly contained, among other things, blank stock certificates. In July 2024, plaintiff commenced this action seeking, among other things, specific performance of part 7 (c). Defendant joined issue and asserted several affirmative defenses and four counterclaims: one for breach of contract (first counterclaim), two seeking declarations that part 7 (c) was unenforceable as illegal and against public policy (third and fourth counterclaims), and one alleging conversion/replevin based upon plaintiff's alleged failure to return defendant's corporate book (second counterclaim). Defendant thereafter filed successive pre-note of issue motions for summary judgment on its declaratory judgment and conversion/replevin counterclaims.FN1 Plaintiff opposed the motions and, while the motions were pending, returned the corporate book to defendant — albeit with some of the stock certificates missing. Supreme Court denied both motions, and this appeal ensued. We affirm.

"On a motion for summary judgment, the movant has the initial burden to establish its prima facie entitlement to summary judgment as a matter of law by submitting evidentiary proof in admissible form, demonstrating the absence of any material issues of fact" (Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1210 [3d Dept 2020] [internal quotation marks and citations omitted]; accord Durr v Capital Dist. Transp. Auth[*2]., 198 AD3d 1238, 1239 [3d Dept 2021]). Only if the movant satisfies its initial burden does "the burden shift to the nonmovant to present evidence demonstrating the existence of a triable issue of fact" (Aretakis v Cole's Collision, 165 AD3d 1458, 1459 [3d Dept 2018] [internal quotation marks and citations omitted]). In reviewing a summary judgment motion, "courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations" (Sovocool v Cortland Regional Med. Ctr., 218 AD3d 947, 949 [3d Dept 2023] [internal quotation marks and citations omitted]; see White Knight Constr. Contrs., LLC v Haugh, 216 AD3d 1345, 1346-1347 [3d Dept 2023]).

"Illegal contracts are, as a general rule, unenforceable. However, where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy the right to recover will not be denied" (Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 127 [1992] [internal quotation marks, brackets, ellipsis and citation omitted]).

Measured against the foregoing standard, defendant failed to establish entitlement to a declaration that part 7 (c) of the agreement is unenforceable, as a matter of law, under various provisions of the Alcoholic Beverage Control Law, described in more detail below. As we understand them, the statutory provisions upon which defendant relies would render part 7 (c) of the agreement "merely malum prohibitum," and nothing in those statutory provisions expressly provides that violations "will deprive the parties of their right to sue on the contract" (id. [internal quotation marks and citation omitted]; see Lizard O's, Inc. v Baha Lounge Corp., 214 AD3d 597, 598 [1st Dept 2023]).FN2

As to defendant's fourth counterclaim alleging that part 7 (c) is illegal because it requires an ownership change without an SLA-approved corporate change application, Alcoholic Beverage Control Law § 99-d (2) provides that, "[b]efore any . . . corporate change . . . can be effectuated . . . there shall be filed with the [SLA] an application for permission to make such change." As Supreme Court observed, Alcoholic Beverage Control Law § 99-d (2) does not require SLA approval of a corporate change before it can be effectuated, and the unambiguous terms of the agreement do not condition the transfer required by part 7 (c) on the SLA's approval of the corporate change (compare B & A Realty Mgt., LLC v Gloria, 192 AD3d 851, 853 [2d Dept 2021]). Other cited provisions requiring prompt notification of changes to a license application, and prohibiting unauthorized transfer of a license, are inapposite and thus do not affect our conclusion that [*3]Supreme Court properly denied defendant's motion with respect to its fourth counterclaim (see Alcoholic Beverage Control Law §§ 110 [4]; 111 [1]).

Defendant's third counterclaim alleges that part 7 (c) is illegal and against public policy to the extent its enforcement would result in Rood having simultaneous interests in manufacturer and retail licensees. In that respect, it is unlawful under provisions of the Alcoholic Beverage Control Law commonly called the Tied House Rules for an SLA-licensed manufacturer to "[b]e interested directly or indirectly in any premises where any alcoholic beverage is sold at retail; or in any business devoted wholly or partially to the sale of any alcoholic beverage at retail by stock ownership, interlocking directors, mortgage or lien or any personal or real property, or by any other means" (Alcoholic Beverage Control Law § 101 [1] [a]; see generally JRC Beverage, Inc. v K.P. Global, Inc., 223 AD3d 53, 65-66 [2d Dept 2024]). Moreover, "[n]o retail licensee for on-premises consumption shall be interested, directly or indirectly, in any premises where liquors, wines or beer are manufactured or sold at wholesale, by stock ownership, interlocking directors, mortgage or lien on any personal or real property or by any other means" (Alcoholic Beverage Control Law § 106 [13] [a]).

Because authority indicates that the SLA may have no discretion to grant "exceptions" to the Tied House Rules (Matter of RIHGA Intl. U.S.A. v New York State Liq. Auth., 84 NY2d 876, 879 [1994]), defendant asserts that Rood's interest in Sundown would bar the SLA from approving any corporate change application. The record reflects that the parties submitted two corporate change applications to the SLA, which applications were rejected for paperwork defects — not based upon a violation of the Tied House Rules. In our view, defendant's reliance on authority to predict the outcome of an administrative process that has not fully run its course does not constitute "sufficient evidence to demonstrate the absence of any material issues of fact" (Ali-Hasan v St. Peter's Health Partners Med. Assoc., P.C., 226 AD3d 1199, 1200 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 906 [2024]; see generally Alcoholic Beverage Control Law § 2).FN3

Next, with respect to defendant's second counterclaim alleging conversion/replevin, we note that while defendant's motion was pending, plaintiff returned the corporate book.FN4 As such, replevin does not lie, as that cause of action requires proof, among other things, that plaintiff "is in possession of certain property of which [defendant] claims to have a superior right" (Batsidis v Batsidis, 9 AD3d 342, 343 [2d Dept 2004]). By contrast, "[c]onversion is an unauthorized exercise of dominion and control over property by someone other than the owner, where such control interferes with and is in defiance of the superior possessory right of the owner or another person" (Cuprys v Volpicelli, 170 [*4]AD3d 1477, 1478 [3d Dept 2019] [internal quotation marks and citations omitted]; accord Van Amburgh v Boadle, 231 AD3d 187, 193 [3d Dept 2024]). Moreover, "[i]f possession of the property is originally lawful, a conversion occurs when the [plaintiff] refuses to return the property after a demand" (Cuprys v Volpicelli,170 AD3d at 1478 [internal quotation marks and citations omitted]).

Defendant's proof shows that plaintiff, as defendant's agent, came into possession of the corporate book lawfully, but the management agreement specifies that all of defendant's records remain its property. Defendant's proof also reflects that it made several requests to plaintiff to return the corporate book, which requests were not honored. The burden thus shifted to plaintiff to come forward with evidence "demonstrating the existence of a triable issue of fact" (Aretakis v Cole's Collision, 165 AD3d at 1459 [internal quotation marks and citations omitted]). Plaintiff met this burden with Birdsall's affidavit explaining, in sum and substance, that plaintiff intended to comply with defendant's request to return the corporate book, but defendant failed to communicate to facilitate the transfer. The conflicting evidence creates a credibility issue that is not resolvable on summary judgment, and thus defendant's motion as to its second counterclaim was appropriately denied (see Sovocool v Cortland Regional Med. Ctr., 218 AD3d at 949). Defendant's remaining contentions, to the extent not specifically addressed, have been reviewed and deemed meritless.

Clark, J.P., Pritzker, McShan and Corcoran, JJ., concur.

ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1

Defendant did not seek summary judgment on the first counterclaim alleging breach of contract.

Footnote 2

A contract that is malum prohibitum is "unenforceable because the conduct thereunder was prohibited by statute" — as opposed to a contract that is "malum inse, i.e., unenforceable because the conduct thereunder was by its very nature prohibited" (Specialty Rests. Corp. v Barry, 262 AD2d 926, 927 [3d Dept 1999]).

Footnote 3

Plaintiff's opposition papers included a waiver of Rood's interest in defendant, which waiver defendant contends does not cure the alleged conflict with the Tied House Rules — an issue best left to the SLA in the first instance.

Footnote 4

Although the corporate book was incomplete upon its return, defendant's appellate contentions do not include a request for partial summary judgment based upon the missing parts of the corporate book (see generally CPLR 3212 [e]).