Matter of Smelyansky v New York State Off. of Gen. Servs.
2026 NY Slip Op 03708
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Rachael Smelyansky, Appellant,
v
New York State Office of General Services et al., Respondents.

Decided and Entered:June 11, 2026
CV-24-1482 CV-25-0269
Calendar Date: April 22, 2026
Before: Aarons, J.P., Reynolds Fitzgerald, Powers, Corcoran And Ryba, JJ.

Max Smelyansky, Albany, for appellant.
Letitia James, Attorney General, Albany (Douglas E. Wagner of counsel), for respondents.

[*1]
Corcoran, J.
Appeals (1) from an order of the Supreme Court (Kimberly O'Connor, J.), entered August 2, 2024 in Albany County, which, among other things, dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and plenary action, to review a determination of respondent Office of General Services denying petitioner's request to telecommute full time, and (2) from a judgment of said court, entered January 21, 2025 in Albany County, which, among other things, upon reargument, granted respondents' motion for summary judgment dismissing the complaint.
Petitioner alleges that her employer, respondent New York State Office of General Services (hereinafter OGS), engaged in unlawful employment discrimination when it denied her request to telecommute full time to accommodate her anxiety-related disability. She brought a CPLR article 78 proceeding to annul that administrative decision, combined with an action under the Human Rights Law for discrimination and retaliation seeking money damages and equitable relief.FN1 Respondents answered and immediately moved for summary judgment dismissing the petition/complaint.FN2 Supreme Court (1) dismissed the CPLR article 78 petition after finding that OGS's determination was rational and supported by the record and (2) denied OGS's motion for summary judgment dismissing the discrimination and retaliation action seeking money damages, including back pay and restoration of certain benefits. Upon reargument, Supreme Court granted OGS's motion for summary judgment, concluding as a matter of law that petitioner could not perform her essential job duties with the requested accommodation to her disability, and that the employer's actions were not motivated by discrimination or retaliation. Petitioner appeals, and we reverse.
Petitioner was employed by OGS as a "Contract Management Specialist 1." In July 2020, during the COVID-19 pandemic, OGS granted petitioner an accommodation permitting her to work remotely full time due to her anxiety related to COVID-19 exposure. OGS extended that accommodation at petitioner's request several times through early 2023, consistent with its pandemic-era practice of liberally permitting telework for its entire workforce without regard to an employee's disability. However, the agency never intended for those measures to be permanent.
By early 2023, OGS decided to curtail remote work throughout its ranks. It concluded that remote work hampered efficient collaboration and caused employees to become "siloed" within their roles; it found that training and collaboration were more effective in person. To promote more direct supervision, its new telecommuting policy required employees to be present on most days. It permitted less remote work in general and evaluated remote work accommodation requests on a case-by-case basis.
In April 2023, petitioner requested a further extension of her full-time remote work accommodation, citing COVID-19 related anxiety. Notably, OGS never disputed [*2]that petitioner's anxiety constituted a disability as defined by the Human Rights Law or the Americans with Disabilities Act.FN3 In response, OGS purportedly considered petitioner's position and job duties and concluded that full-time remote work would both prevent her from performing essential job functions and impose an undue hardship on the agency. In its formal determination dated May 16, 2023, OGS determined, among other things, that petitioner must be physically present to (1) obtain answers to "spontaneous process questions," (2) benefit from "interpersonal exchange with coworkers" and (3) receive "direction from managers in real time." Agency staff claimed that employees, including petitioner, communicated and collaborated better in person where they could share "non-verbal cues" and resolve issues face to face. OGS denied petitioner's request to continue working remotely full time; as an alternative, OGS proposed a gradual return-to-work plan. Petitioner pursued an administrative appeal of the employer's denial to the Reasonable Accommodation Appeals Review Committee, which upheld OGS's determination. On May 24, 2023, petitioner reluctantly advised her supervisor that she would return to work under the modified schedule offered by OGS and selected specific dates in June 2023 to report to the office.
Following the denial of her administrative appeal, petitioner also applied for and received intermittent leave under the Family and Medical Leave Act (hereinafter FMLA) to care for an ailing family member. Petitioner and OGS disagreed on whether her proposed hybrid schedule required her to "make up" scheduled in-person days when she used FMLA leave instead of appearing in the office. OGS advised petitioner that "call[ing] out on each of your in-office days renders the key provision of the Reasonable Accommodation meaningless." After petitioner failed to report to the workplace as directed in June 2023, OGS designated her "absent without leave" (hereinafter AWOL) and withheld her compensation.
In August 2023, petitioner submitted a new reasonable accommodation request based on depressive and anxiety disorders, unrelated to COVID-19, and again sought full-time telecommuting, citing updated medical documentation from her physician. Following more discussion, the parties agreed that petitioner would gradually return to work in person, with changes to her work environment and schedule. Petitioner returned with a modified schedule and a private office. According to respondents, she has performed satisfactorily, even receiving a promotion during this litigation.
Initially, we note that petitioner's right to take a direct appeal from the order dismissing her CPLR article 78 petition terminated upon entry of the final judgment, and therefore, petitioner's appeal from that order must be dismissed (see Matter of Williamson v Fischer, 96 AD3d 1304, 1305 [3d Dept 2012], lv dismissed 20 NY3d 995 [2013]). Nevertheless, the issues raised therein are before us [*3]on appeal from the final judgment (see CPLR 5501 [a] [1]; Matter of Champlain Ctr. N. LLC v Town of Plattsburgh, 165 AD3d 1440, 1441 n 1 [3d Dept 2018]; Silipo v Wiley, 138 AD3d 1178, 1179 [3d Dept 2016]).
Turning to the merits, we first address whether OGS was entitled to summary judgment dismissing petitioner's discrimination claim. "On a motion for summary judgment, the movant has the initial burden to establish its prima facie entitlement to summary judgment as a matter of law by submitting evidentiary proof in admissible form, demonstrating the absence of any material issues of fact. Only if the movant satisfies its initial burden does the burden shift to the nonmovant to present evidence demonstrating the existence of a triable issue of fact" (Copeland Holdings, LLC v Gravity Ciders, Inc., ___ AD3d ___, ___, 2026 NY Slip Op 02704, *1-2 [3d Dept 2026] [internal quotation marks and citations omitted]). Executive Law § 296 (3) (a) requires employers to provide reasonable accommodations for the known disabilities of employees related to their employment (see Graham v New York State Off. of Mental Health, 154 AD3d 1214, 1217 [3d Dept 2017]; Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d 1159, 1162 [3d Dept 2011]). A reasonable accommodation permits the employee "to perform in a reasonable manner the activities involved in the job" (Executive Law § 292 [21-e]), and may include a modified work schedule, provided that the accommodation does not impose an undue hardship on the employer (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 834 [2014]; Briffa v New York State Dept. of Health, ___AD3d ___, ___, 2026 NY Slip Op 02180, *3 [3d Dept 2026]; Graham v New York State Off. of Mental Health, 154 AD3d at 1217). Remote work may constitute a viable reasonable accommodation (see Laguerre v Natl. Grid USA, 2022 WL 728819, *3, 2022 US App LEXIS 6328, *6 [2d Cir Mar. 11, 2022, No. 20-3901-cv]; Matter of Schimenti v City of New York, 245 AD3d 722, 725 [2d Dept 2026]).
To establish that OGS unlawfully denied a reasonable accommodation request, petitioner must demonstrate that she is an individual with a statutorily defined disability, that OGS had notice of that disability and that, with a reasonable accommodation, she could perform the essential functions of her job (see Executive Law § 296 [3] [a]; Graham v New York State Off. of Mental Health, 154 AD3d at 1217-1218). Where "an employee has a[n] . . . impairment that prevents the employee from performing the core duties of [the] job even with a reasonable accommodation, the employee does not have a disability covered by the statute, and consequently, the employer is free to take adverse employment action against the employee based on that impairment" (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 834; see Executive Law § 292 [21]). "Ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances" (Briffa [*4]v New York State Dept. of Health, ___ AD3d at ___, 2026 NY Slip Op 02180, *2 [internal quotation marks, brackets and citations omitted]), "including the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring the [employee] to perform the function, mention of the function in any collective bargaining agreement, the work experience of past employees in the job, and the work experience of current employees in similar jobs" (Gill v Maul, 61 AD3d 1159, 1160-1161 [3d Dept 2009] [internal quotation marks and citation omitted]).
"[T]he first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested" (Hosking v Memorial Sloan-Kettering Cancer Ctr., 186 AD3d 58, 62-63 [1st Dept 2020] [internal quotation marks and citation omitted]. "[T]he essential functions of the position need to be part of the interactive process the law requires, not a unilateral employer decision cloaked by business judgement" (id. at 66). An employer generally cannot obtain summary judgment on a discrimination claim unless the record demonstrates that it engaged in a good faith interactive process (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 837; Briffa v NY State Dept. of Health, ___ AD3d at ___, 2026 NY Slip Op 02180, *3-4). The employer's individualized assessment of the employee's essential duties and the feasibility of the requested accommodation is a defining feature of disability rights law, as it represents "the key mechanism for facilitating the integration of disabled employees into the workplace" (Phillips v City of New York, 66 AD3d 170, 175 [1st Dept 2009] [internal quotation marks and citation omitted]; see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 836).
Here, petitioner had a disability and the agency had notice of it, as confirmed by the agency's contemporaneous emails to petitioner. "As such, the issue distills to whether [petitioner] could perform the essential functions of [her] job with a reasonable accommodation and whether [OGS] refused that reasonable accommodation" (Briffa v New York State Dept. of Health, ___ AD3d at ___, 2026 NY Slip Op 02180, *2). To meet its prima facie burden on summary judgment, OGS sought to prove that petitioner could not perform those essential functions, even with an accommodation (see Rizzo v Board of Educ. of E. Aurora Union Free Sch. Dist., 247 AD3d 1558, 1559 [4th Dept 2026]; Halvatzis v Jamaica Hosp. Med. Ctr., 163 AD3d 532, 533 [2d Dept 2018]; Martin v United Parcel Serv. of Am., Inc., 104 AD3d 1173, 1174 [4th Dept 2013]).
Bereft of rudimentary discovery such as depositions of the parties, OGS failed to establish the essential functions of petitioner's position. "To avoid unfounded reliance on uninformed assumptions, the identification of the essential functions of [*5]a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice" (Borkowski v Valley Cent. School Dist., 63 F3d 131, 140 [2d Cir 1995] [citation omitted]). Here, the employer's May 16, 2023 denial letter and its internal emails preceding it described petitioner's duties vaguely and parroted agency-wide operational concerns, showing its failure to conduct the required "highly fact-specific inquiry" into "the actual functioning and circumstances of the particular enterprise involved" (Sharp v Abate, 887 F Supp 695, 699 [SD NY 1995] [internal quotation marks and citation omitted]; accord Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 840). Although an employer's judgment is one of several considerations, it is not conclusive (see Matter of Hirsch v New York State Div. of Human Rights, 232 AD3d 1248, 1250 [4th Dept 2024]). OGS did not identify the actual tasks or the amount of time spent performing them, whether those tasks required petitioner's in-person presence, the consequences of performing them remotely, which tasks could be performed by others or whether petitioner supervises other employees. Nor did OGS submit an accurate written job description, evidence regarding the work experience of employees in the same or similar positions or proof bearing on other relevant factors (see Briffa v New York State Dept. of Health, ___ AD3d at ___, 2026 NY Slip Op 02180, *2). OGS failed to show that it considered petitioner's "major tasks, assignments, [and] activities" as detailed in her past performance evaluations, which included reviewing proposed contracts, preparing reports, communicating with stakeholders and providing guidance to agency staff and bidders. Under the totality of the circumstances, OGS's conclusory characterization of certain vague communication and collaboration functions as "essential" was insufficient to satisfy its prima facie burden, particularly where its analysis was not tailored to petitioner's job description and arguably applied to all employees working in diverse jobs.
Additionally, OGS did not address which, if any, of petitioner's duties must be performed in person. Notably absent from the record is any assessment that petitioner was unable to perform her duties remotely or which particular tasks assigned to her mandated attendance in the office. To the contrary, the record reflects that petitioner worked effectively from home for three years pursuant to prior accommodations. While OGS acted within its legitimate authority to abridge its flexible pandemic-era remote work policy, it was still required to conduct an individualized assessment of petitioner's ability to work remotely to accommodate her disability after it resumed primarily in-person operations.
Finally, OGS failed to demonstrate that petitioner's requested accommodation would constitute an undue hardship. Under the Human Rights Law, "[u]ndue hardship" means "significant difficulty [*6]or expense to the employer" (9 NYCRR 466.11 [b] [2]). When determining whether an accommodation would result in undue hardship, "any relevant factor" will be considered, including those set forth in Executive Law § 296 (3) (b), as well as (1) the size of the business measured by size of workforce and budget, (2) the type of operation in which the business is engaged and (3) the nature and cost of the requested accommodation (see 9 NYCRR 466.11 [b] [2] [i-iii]). OGS did not particularize these factors, relying instead on generalized claims about the aggregate impact of remote work on its nondisabled employees. OGS staff conceded that petitioner's business unit performed "limited tasks" that required an in-person response and that "many members of the [procurement services] staff have been working from home successfully." Petitioner's supervisor characterized her as "trainable and coachable" and noted that she "participate[d] in team collaboration" and "deliver[ed] on work obligations and expectations," all while working remotely. As conceded at oral argument, the employer defined the hardship created by remote work as the "aggregated" effect of having two work forces (one in person, the other remote) on the agency as a whole, including the impact on in-person staff morale. However, OGS did not identify any specific hardship arising from continuing petitioner's work-from-home arrangement. We have affirmed an agency's denial of an employee's reasonable accommodation request for a liberal remote work arrangement upon an individualized assessment of the employee's essential job functions and the impact on coworkers, supervisors and productivity, along with proof of the good faith interactive process used by the agency (see Briffa v New York State Dept. of Health, ___ AD3d at ___, 2026 NY Slip Op 02180, *3-4). Although OGS engaged in a good faith interactive process here, its conclusory assertions were insufficient to establish petitioner's essential duties or undue hardship as a matter of law (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 837; Hosking v Memorial Sloan-Kettering Cancer Ctr., 186 AD3d at 62-63). Even if OGS had satisfied its initial burden to demonstrate that petitioner could not perform the essential functions of her job with a reasonable accommodation, she created a triable question of fact by submitting evidence that her requested accommodation would be effective, including previous satisfactory performance evaluations, her direct supervisor's opinion that full-time telecommuting was compatible with petitioner's job duties, and internal emails that candidly minimized the impact of granting her accommodation (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 840; Graham v New York State Off. of Mental Health, 154 AD3d at 1217-1218). Accordingly, Supreme Court erred in dismissing petitioner's discrimination claim.
Turning next to petitioner's CPLR article 78 proceeding, the substantive elements of petitioner's [*7]discrimination claim mirror the legal standard for evaluating the agency-employer's administrative denial of petitioner's reasonable accommodation request (see Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d at 1162-1163). "When reviewing an administrative determination made without an evidentiary hearing, the issues are whether the determination 'was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion' " (Matter of Ventresca-Cohen v DiFiore, 225 AD3d 9, 11 [3d Dept 2024] [citation omitted], quoting CPLR 7803 [3]).
When it denied petitioner's reasonable accommodation request, OGS failed to apply the correct individualized standard under the Human Rights Law (see Jacobsen v NY City Health & Hosps. Corp., 22 NY3d at 836). Rather, OGS conflated its preferred reasonable workplace goals with petitioner's essential job functions and then cited the impact of remote work on its aggregate workforce. Thus, OGS's decision was affected by an error of law. Because Supreme Court adopted the agency's flawed legal standard when it determined that OGS's decision was supported by a rational basis, it erred in dismissing the petition.
Finally, we find that Supreme Court improperly granted summary judgment dismissing petitioner's retaliation claim under Executive Law § 296 (7). To establish a prima facie case of actionable retaliation, an employee must demonstrate that she engaged in protected activity, that the employer was aware of that activity, that she suffered an adverse employment action and that there was a causal connection between the two (see Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights, 41 NY3d 326, 331 [2024]; Yegoryan v BB Med. & Dermatology P.C., 245 AD3d 1000, 1002 [3d Dept 2026]).FN4 "To establish its entitlement to summary judgment in a retaliation case, [OGS] must demonstrate that [petitioner] cannot make out a prima facie claim of retaliation or, having offered legitimate, nonretaliatory reasons for the challenged actions, that there exists no triable issue of fact as to whether the [agency's] explanations were pretextual" (Keceli v Yonkers Racing Corp., 155 AD3d 1014, 1016 [2d Dept 2017] [internal quotation marks and citations omitted]).
Here, petitioner alleges that OGS retaliated against her when it penalized her as AWOL after she charged FMLA leave on days that she was expected to report to the office to "make up" missed "in office" days. Viewing the evidence in the light most favorable to petitioner, and absent evidentiary proof about the parties' conflicting interpretations of the modified accommodation at issue, whether OGS's stated reason for deeming petitioner AWOL and withholding her compensation was pretextual presents a triable issue of fact.
Aarons, J.P., Reynolds Fitzgerald, Powers and Ryba, JJ., concur.
ORDERED that the appeal from the order entered August 2, 2024 is dismissed, without costs.
ORDERED that [*8]the judgment entered January 17, 2025 is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
Although petitioner references the Americans with Disabilities Act (see 42 USC § 12101 et seq.) throughout the factual allegations of her petition/complaint and appellate brief, the causes of action and the arguments raised below and on appeal are limited to alleged violations of the Human Rights Law (see Executive Law art 15).

Footnote 2
Supreme Court's determination that Governor Kathy Hochul was not a necessary party to the CPLR article 78 proceeding is not challenged on this appeal (see CPLR 1001 [a]).

Footnote 3
To the extent OGS claims for the first time on appeal that fear of COVID may not qualify as a disability requiring a reasonable accommodation, the agency did not raise this issue on summary judgment, nor when it determined, on multiple occasions between July 21, 2020 and January 4, 2023, that petitioner's requests to work remotely met "the reasonable accommodation criteria outlined by the Americans with Disabilities Act." Accordingly, its belated contention is not properly before us.

Footnote 4
OGS does not dispute that petitioner's grievance constituted protected activity (see Davis v School Dist. of City of Niagara Falls, 4 AD3d 866, 867 [4th Dept 2004]), nor that the AWOL designation, with consequential payroll deductions, was an adverse employment action.